**UNITED STATES of America,**
**Plaintiff,**

v.

**Hermelindo Garcia MIRANDA,**
**Defendant.**

No. CRIM.NO.99–31(4)(JRT/FLN).

United States District Court,
D. Minnesota.

Aug. 27, 1999.

E. David Reyes, Assistant United States Attorney, Office of the United States Attorney, Minneapolis, MN for plaintiff.

Gary R. Bryant–Wolf, Law Office, Minneapolis, MN, for defendant.

## ORDER ON REPORT AND RECOMMENDATION DATED APRIL 1, 1999

TUNHEIM, District Judge.

On January 5, 1999, officials from the Ramsey and Hennepin County sheriff's offices conducted a search pursuant to a warrant at 972 Carroll Avenue in Saint Paul, Minnesota. Upon the discovery of cocaine, methamphetamine, a large amount of cash and a firearm, the officials arrested four Mexican nationals present at the scene and took them into custody. Defendant Hermelindo Garcia Miranda ("Miranda") was among those arrested.

On January 6, 1999, while Miranda was in custody at the Ramsey County Jail Annex, officials interviewed him separately. A Hennepin County detective conducted the interview and tape recorded it with a visible recording device. With the assistance of an interpreter the detective read Miranda his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to conducting the interview. Miranda indicated that he understood his rights and was willing to talk.

On January 7, 1999, an INS agent with Spanish language training assisted other officers in conducting a second tape-recorded interview of Miranda. Before questioning him the INS agent gave him another *Miranda* warning. Miranda indicated his willingness to waive his rights and speak with the officers. After issuing the *Miranda* warning the INS agent also advised him that, as a Mexican national, he had a right to contact the Mexican consulate pursuant to the treaty provisions of the Vienna Convention. Miranda did not indicate a desire to exercise that right.

Officials continued to investigate this matter after Miranda's arrest. On January 8, 1999 they obtained evidence from a Chevrolet Lumina van by a search conducted pursuant to a warrant.

On February 24, 1999, Miranda filed motions to suppress the evidence seized from the premises at 972 Carroll Avenue in Saint Paul, Minnesota, and to suppress the evidence seized from the Chevrolet Lumina van. Miranda also filed a motion to suppress all statements made during his arrest and detention.

In a Report and Recommendation dated April 1, 1999, the United States Magistrate Judge recommended that Miranda's motions to suppress the seized evidence be denied. The Magistrate Judge further recommended that the Court grant Miranda's motion to suppress statements in part and deny it in part. The Magistrate Judge specifically recommended that the Court exclude any in-custody statements made by Miranda before officials advised him of his rights under the Vienna Convention, but admit statements made after officials advised him of his rights under the Convention. This matter is before the Court on objections to the Report and Recommendation by both parties.

The Court has reviewed *de novo* the parties' objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and D. Minn. LR 72.1(c)(2). For the reasons set forth in the Report and Recommendation, the Court agrees that the evidence seized from 972 Carroll Avenue and from the Chevrolet Lumina van is admissible. Nonetheless, for the reasons set forth below the Court disagrees with the Magistrate Judge's determination that Miranda's in-custody statements made prior to notification of his rights under the Vienna Convention must be suppressed.

## I. Evidence seized from 972 Carroll Avenue and the Chevrolet Lumina van

Miranda concedes that under the present state of the law, as set forth in *United*

*States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), he has no expectation of privacy in either the premises at 972 Carroll Avenue or the Chevrolet Lumina van. Miranda thus acknowledges that under the prevailing law he has no standing to challenge the seizures from those locations. He nonetheless argues that *Salvucci* should be overruled. *Salvucci* is established Supreme Court precedent, and therefore, is binding on this Court.[1] Miranda's motion to suppress evidence is denied accordingly.

## II. Miranda's in-custody statements

Miranda argues that the officers who arrested him violated the Vienna Convention by failing to inform him immediately that, as a Mexican national, he had a right to notify the Mexican consulate of his arrest and seek its assistance. Miranda further argues that the appropriate remedy for this violation is the suppression of any statements that he made during and after his arrest.

Article 36 of the Vienna Convention provides that if a foreign national is arrested in the United States, the authorities "shall inform the person concerned without delay" that the person has the right to contact the consulate of his or her home country. *See* Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 596 U.N.T.S. 261 [hereinafter the "Convention"].

■ The government contends that the authorities involved complied with the Convention by notifying Miranda of his right to contact the Mexican consulate on January 7, 1999. The Court disagrees. Although the treaty does not establish a rigid time-frame during which authorities must notify an arrested foreign national of his or her rights under the Convention, it does state that notification must occur "without delay." The authorities arrested Miranda on January 5, 1999, and the government concedes that they did not advise

him of his rights under the Convention until January 7, 1999. The Court finds that a period of two days constitutes a "delay" within the meaning of the Convention when, as in this case, the record is devoid of evidence demonstrating that earlier notification would not have been reasonably possible. Indeed, the fact that authorities were able to administer *Miranda* warnings to him during the relevant time-frame amply demonstrates that the officers had sufficient means and opportunity to provide him with notification. Moreover, the record does not reflect that the officers were unaware of Miranda's nationality prior to notifying him of his rights. For these reasons, the Court concludes that the arresting authorities violated the terms of the Convention in failing to advise Miranda of his right to contact the Mexican consulate until two days after his arrest.

Nevertheless, the Court's determination that the arresting authorities violated the Convention does not lead inexorably to a conclusion that Miranda's statements prior to notification must be suppressed. Whether an individual foreign national has standing to assert rights under the Convention is an issue open to debate. *See United States v. Lombera–Camorlinga,* 170 F.3d 1241, 1242–43 (9th Cir.1999) (holding that individuals have standing to assert rights under the convention, because "[i]t has long been recognized that, where treaty provisions establish individual rights, these rights must be enforced by the courts of the United States at the behest of the individual"); *see also Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (stating that the Convention "arguably confers on an individual the right to consular assistance following arrest," but rejecting the petitioner's habeas corpus claim under the Convention as procedurally defaulted). *But see Kasi v. Commonwealth,* 508 S.E.2d 57, 64 (Va.1998) (holding that the

---

1. The Court presumes that Miranda brings this issue to the Court's attention in order to preserve it for appeal.

Convention creates no legally enforceable individual rights).

The Court need not resolve this difficult issue because even assuming, without deciding, that Miranda has standing to assert individual rights under the Convention, he is not entitled to the relief that he requests. The few courts that have addressed directly whether suppression is an appropriate remedy for a violation of the Convention are not in agreement. *See Lombera–Camorlinga,* 170 F.3d at 1243–44 (reversing trial court's denial of defendant's motion to suppress evidence based on a violation of his rights under the Convention). *But see United States v. Torres–Del Muro,* 58 F.Supp.2d 931, 933–35 (C.D.Ill.1999) (holding the exclusionary rule inapplicable to violations of the Convention because the Convention itself does not set forth such a remedy, and because the rights violated are not constitutional rights); *cf. United States v. Ademaj,* 170 F.3d 58, 67 (1st Cir.1999) (noting that the Convention establishes no judicial remedy for its violation, and holding that violation did not warrant vacatur of conviction on appeal).

Nevertheless, the majority of courts to consider this issue agree that no remedy is warranted unless the defendant can demonstrate that the Convention violation resulted in some form of prejudice. *See Lombera–Camorlinga,* 170 F.3d at 1244 ("Upon a showing that the Vienna Convention was violated ... the defendant in a criminal proceeding has the initial burden of producing evidence showing prejudice from the violation of the Convention."); *United States v. Kevin,* 1999 WL 194749, *4 (S.D.N.Y.1999) (holding that the defendants in the case at bar could obtain relief only by establishing prejudice caused by a violation of their rights under the Convention); *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1097 (S.D.Cal.1998) (holding that, "to have his statements suppressed, Defendant must show prejudice."); *see also Breard,* 118 S.Ct. at 1355 (stating that even if the habeas petitioner's Vienna Convention claim had been "properly raised and proven, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on trial"); *Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.1996) (rejecting habeas petitioner's claim under the Convention on the ground that any assistance he might have obtained from his consulate would have had no effect on his defense).

■ As a treaty approved by the United States Senate and formally ratified by the President, the Convention is the "supreme law of the land" under our Constitution. *See Breard,* 118 S.Ct. at 1355; U.S. Const. art. VI, cl. 2. Nonetheless, the rights that the Convention establishes do not rise to the level of fundamental or constitutional rights. *See Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir.1997) ("[E]ven if the Vienna Convention on Consular Relations could be said to create individual rights ..., it certainly does not create constitutional rights. Although states may have an obligation under the Supremacy Clause to comply with the provisions of the Vienna Convention, the Supremacy Clause does not convert violations of the treaty provisions ... into violations of constitutional rights."). A violation of the Convention therefore does not rise to the same level, or require the same remedy, as a violation of an individual's due process rights. *See Esparza–Ponce,* 7 F.Supp.2d at 1097 (holding that because a violation of the Convention does not equate to a *Miranda* violation, applying the "presumption of prejudice mandated by Miranda" is inappropriate); *see also Kevin,* 1999 WL 194749 at *3–4 (applying the court's reasoning in *Waldron v. Immigration and Naturalization Serv.,* 17 F.3d 511 (2nd Cir.1994), and holding that because a violation of the Convention does not affect fundamental rights a defendant must establish prejudice in order to seek relief under the Convention). For these reasons, the Court follows the majority of jurisdictions and holds that a criminal defendant must establish prejudice resulting

from a violation of his or her rights under the Convention before obtaining a remedy for such violation.

■ Although, as argued above, the authorities violated the Convention by failing to inform Miranda in a timely fashion that he had a right to contact the Mexican consulate, he has not made the requisite showing of prejudice in order to justify suppression of any statements made during his arrest and detention. Indeed, Miranda's failure to contact the consulate when authorities did notify him of his rights creates a strong inference that, had he been notified earlier, he would not have sought the consulate's assistance. Moreover, Miranda has not demonstrated how, if he had contacted the consulate, such contact might have prevented him from making the statements that he now seeks to exclude. Miranda's motion to suppress statements is denied for these reasons.

### III. Prosecutor's discovery violation

In the Report and Recommendation, the Magistrate Judge found that the government failed to comply with a previous Court Order requiring the parties to make all Rule 16 disclosures by February 17, 1999. Despite this finding, the Magistrate Judge concluded that sanctions for the violation were not warranted. The government objects to the Magistrate Judge's finding on this issue. Because the Magistrate Judge concluded that sanctions were unnecessary, and because Miranda has neither objected to this determination, nor separately moved for sanctions or other appropriate relief, the Court overrules the government's objection as moot.

### ORDER

Based on the foregoing, and all of the records, files and proceedings herein, the court **OVERRULES** defendant Miranda's objections [Docket No. 111], **GRANTS** the government's first objection [Docket No. 117], and **OVERRULES** the government's

second objection [Docket No. 117], and therefore, **ADOPTS in part** the Magistrate Judge's Report and Recommendation [Docket No. 101] and **REJECTS in part** the Report and Recommendation as set forth above. Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Miranda's motion to suppress evidence obtained by search and seizure at 972 Carroll Avenue [Docket No. 56] is **DENIED.**

2. Defendant Miranda's motion to suppress statements [Docket No. 62] is **DENIED.**

3. Defendant Miranda's motion to suppress evidence obtained by search and seizure of Lumina van [Docket No. 66] is **DENIED.**

### REPORT AND RECOMMENDATION

NOEL, United States Chief Magistrate Judge.

**THIS MATTER** came before the undersigned United States Magistrate Judge for a hearing on March 3, 1999, on Defendants' pretrial motions. Investigator Rolland Martinez from the Ramsey County Sheriff's Office, Detective David Bruce from the Hennepin County Sheriff's Office, and United States Immigration and Naturalization Service Special Agent Steven Nusbaum testified for the Government.

### I. FINDINGS OF FACT

On January 5, 1999, Detective David Bruce was among several officers who executed a search pursuant to a warrant for 972 Carroll Avenue in St. Paul, Minnesota.[1] The Defendants, five Hispanic males who are illegal aliens,[2] were taken into custody at the premises after officers discovered narcotics there. Ramsey County Investigator Rolland Martinez, who is fluent in Spanish, assisted in interviewing Defendants Barraza and Olivarez during

1. Several other searches were conducted as part of the investigation of these Defendants. Gov't Exs. 1–6.

2. *United States v. Fuentes, et al.,* Order for Detention, Cr. No. 99–31 (D.Minn. Jan. 1, 1999).

execution of the search warrant, after the Defendants were in custody. The interviews at 972 Carroll took place in the bathroom for privacy, with Investigator Martinez and two other officers present. The interviews were tape recorded.

The Defendants were brought into the bathroom one at a time to speak to the officers. Investigator Martinez first spoke with Barraza. He read Barraza his Miranda rights in Spanish. Barraza said he understood his rights and would answer some questions, depending on what they were. After questioning Barraza, Investigator Martinez then spoke with Olivarez. He read Olivarez his rights in Spanish. Olivarez also agreed to answer questions depending on the subject material. Neither Barraza nor Olivarez requested an attorney during the interviews.

The next day, January 6, 1999, after Defendants were in custody at the Ramsey County Jail Annex, Detective Bruce interviewed separately Miranda, Gonzales, Barraza and Olivarez. These interviews were tape recorded, with the tape recorder in full view and recording throughout the conversations. The interviews took place in an approximately 10' × 10' room. Detective Bruce had a professional interpreter with him who translated his questions into Spanish, listened to the Defendant's response, then translated that response into English. Detective Bruce testified that he gave each Defendant Miranda rights in English which were translated, and that each Defendant indicated that he understood his rights and was willing to talk. None of these Defendants requested an attorney during these interviews.

On January 7, 1999, INS Special Agent Nusbaum gathered personal data from Fuentes, Miranda, Gonzales and Olivarez in order to complete a personal history report (DEA Form 202), a United States Marshals Service booking form, and a record of a deportable alien (INS Form I 213) for each of these Defendants.[3] After

Agent Nusbaum completed this questioning, Detective Bruce and another officer approached him and informed him that they had some questions for Miranda, Gonzales and Olivarez. Agent Nusbaum along with these officers then reinterviewed Defendants Miranda, Gonzales and Olivarez, with Agent Nusbaum interpreting. These interviews, again, were tape recorded. They took place in a holding area of the United States Marshal's Office in Minneapolis. Defendants were advised of their rights by Agent Nusbaum reading the rights in Spanish off of a pre-printed card. After Agent Nusbaum read each right, he stopped to ascertain whether each Defendant understood the right. Each Defendant indicated that he understood and none of the Defendants expressed an unwillingness to talk or requested to speak to an attorney.

At the suppression hearing, Agent Nusbaum stated that INS requires its agents to inform foreign nationals in its custody of their right to contact a consulate from their home country. After receiving their Miranda rights, each of these three Defendants also was advised that he could contact a Mexican consulate if he desired. None of the Defendants indicated a desire to exercise that right. Because Agent Nusbaum gave the right regarding contact with a foreign consulate after the Miranda rights and not while gathering information for forms, he did not give this right to Fuentes, who, unlike Miranda, Gonzales and Olivarez, was not reinterviewed that day by Detective Bruce and the other officer.

## II. ANALYSIS

A. *Fuentes' Motion to Suppress Evidence Seized Pursuant to Search Warrant*

Defendant Fuentes argues that probable cause was lacking in affidavits

3. Agent Nusbaum is a non-native speaker of Spanish but had two years of college Spanish and Spanish classes at the FBI Border Patrol Academy. He passed an internal agency exam for fluency and taught Spanish classes at a federal law enforcement training center.

supporting the search warrants for his car, a 1992 blue Toyota, and a residence in Pine City, Minnesota, where agents believed he was staying. "Probable cause exists when a practical, common-sense evaluation of the facts and circumstances shows a fair probability that contraband or other evidence will be found in the asserted location." *United States v. Adams*, 110 F.3d 31, 33 (8th Cir.1997) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The affidavit supporting the warrant for the car stated that, within 24 hours, officers had executed the search at 972 Carroll Avenue where they found narcotics, a hand gun and over $22,-000 in cash. As a result they arrested the individuals at the address and impounded the cars in which they had observed some of the defendants coming and going. Given that defendants had just been found with this contraband, it was reasonable to suspect that other evidence might be found in the vehicles they used to drive to 972 Carroll.

■ Fuentes also challenges the warrant for the search of a home in Pine City, Minnesota. The Government argues that he does not have standing to challenge the search because he did not reside at the address.[4] Hearing testimony did not touch on Fuentes' place of residence, though the facts from the affidavit supporting the warrant suggest that he did live at the Pine City address. Fuentes' cellular phone records showed he had called the telephone number assigned to the address on several occasions, the subscriber to the telephone number was Jackie Ponce, the affiant knew Fuentes' wife's name was "Jackie," Fuentes had received mail there within the last 30 days, and the affiant knew Fuentes lived somewhere in the area. At the time of the search, the owner of the home told officers that she rented her basement to Jackie Ponce in April of 1998, but she had not seen Ponce

or Fuentes since that time. The owner also told officers that Ponce and Fuentes still had belongings in her basement, and that Fuentes had a key and could come and go without her knowledge. The fact that Fuentes had free access to the house, had belongings there, and had mail delivered there certainly establish that he was at least a guest if not a resident. Fuentes clearly would have privacy interests as a resident of the house, *United States v. Fields*, 113 F.3d 313, 320 (2nd Cir) *cert. denied,* —— U.S. ——, 118 S.Ct. 434, 139 L.Ed.2d 334 (1997), and even as a guest he would maintain some privacy interests. *United States v. Dickson*, 64 F.3d 409 (8th Cir.1995) *cert. denied,* 516 U.S. 1064, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996). Based on these facts, the Court rejects the Government's standing argument.

■ Given standing, however, the Defendant still fails on his challenge to probable cause in the search warrant. The affidavit supporting the warrant establishes Fuentes' probable residency at this address as well as recounts the results of the search of 972 Carroll and Fuentes' subsequent arrest. Though no further facts support a suspicion that any criminal activity was afoot at the Pine City address, it was reasonable to infer that officers might find further evidence of narcotics crimes there, given Fuente's detention at the time as a suspected drug trafficker. *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. 2317 (stating standard for probable cause finding). Regardless, even if the link of criminal activity to this address was insufficient to establish probable cause that evidence of a crime would be found there, the warrant was not so lacking in probable cause that the *Leon* good faith exception to the warrant requirement would not apply to save the evidence from suppression. *United States v. Leon*, 468 U.S. 897, 913, 920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (holding that evidence need not be sup-

---

**4.** A defendant can challenge admissibility of seized evidence only for a violation of his own, not someone else's, constitutional rights. *United States v. Salvucci*, 448 U.S. 83, 86–87, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

Rights relating to search of property hinge on whether or not the defendant had a privacy interest in the area/items searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104–5, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

pressed when officers relied in good faith on a facially valid warrant later found to be lacking in probable cause).

 Fuentes further argues that officers went outside the scope of the warrant and seized a gun from the Pine City residence in violation of *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (explaining that particularity requirement protects from seizure of items not described in the warrant). The warrant allowed officers to search in places that might have held controlled substances, monies from profits of sales, and related documents, etc. In this search, they found a firearm and 9mm clip under a mattress. The officers found the gun in plain view in a logical place to search for the items listed in the warrant. Officers can properly seize items not listed on the search warrant if they are in plain view and if it is readily apparent that the item is evidence of a crime. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It would be readily apparent to a reasonably trained officer that a firearm could be used during commission of a narcotics crime, so seizure of it under a warrant to search for evidence of such crimes was proper.

### B. *Fuentes' Motion for Return of Property*

Fuentes also wants returned several personal items unrelated to suspected criminal activity, such as clothing, bedding, beds, dressers, etc. Any seized items that have no evidentiary value and that are not contraband should be returned. However, if the Government contends that any of this property is evidence, it has the right to hold this property throughout the course of the proceedings against Defendants.

### C. *Miranda's Motion to Suppress Evidence*

Miranda moves to suppress evidence seized pursuant to warrants for 972 Carroll and a 1992 Chevy Lumina Van. However, Miranda concedes in his memorandum in support of his motion that he did not have privacy interests in these places and, therefore, does not have standing to challenge the searches. *See Rawlings*, 448 U.S. at 104–5, 100 S.Ct. 2556.

### D. *Motions by Gonzalez and Olivarez to Suppress Evidence*

Gonzalez and Olivarez filed motions to suppress seized evidence but appear to have abandoned them by not making oral or written arguments in support of the motions. For the record, the Court notes that it has reviewed the affidavits supporting the search warrants and, based on the arguments and evidence already presented, did not find that any of them lacked probable cause.

### E. *Motions by Fuentes, Gonzalez, Olivarez and Miranda to Suppress Statements Based on the Vienna Convention*

The Defendants Fuentes, Gonzalez, Olivarez and Miranda have moved to suppress their statements on the ground that officers and agents violated the Vienna Convention by not informing the Defendants that as foreign nationals they had the right to speak with a consulate from their home country.

Article 36 of the Vienna Convention on Consular Relations directs authorities to inform those arrested in a foreign state that they have a right to communicate without delay with the consular post of their country.[5] Vienna Convention on

---

**5.** At least one court has raised the question of whether an individual can demand enforcement of a treaty, which is a contract between two countries. *United States v. Esparza-Ponce*, 7 F.Supp.2d 1084, 1095 (S.D.Cal. 1998). Because the Supreme Court has allowed an individual to assert rights under a treaty if the treaty confers rights to the individual, *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), and because this treaty terms consular contact a "right" of the detainee, Vienna Convention, 21 U.S.T. 77, art. 36, § 1(b), the Court believes that Defendants have standing to assert the right. Without discussing the standing issue, the Supreme Court recently stated that the Vienna

Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 1967 WL 18349 at *11. The United States signed this treaty in Vienna on April 24, 1963, and, after necessary ratifications, it came into force for the United States on December 24, 1969. 21 U.S.T. 77.[6] The requirement to advise foreign nationals of their right to speak to a consulate is codified in Department of Justice Regulations at 28 C.F.R. § 50.5.[7]

Agent Nusbaum stated that he advised Gonzalez, Olivarez and Miranda individually of this right when he participated in their interviews on January 7, 1999. There is no record that any Defendants received this warning prior to Agent Nusbaum giving it to these three on this date.

Officers who interviewed the Defendants without advising them of their rights under the Vienna Convention violated the treaty. *Breard v. Greene,* 523 U.S. 371, ——, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (explaining that the Vienna Convention and treaties in general are recognized as "the supreme law of the land" in the Constitution). The interviewing officers informed all of the Spanish-speaking Defendants of their Miranda rights at each interview, but, other than Agent Nusbaum, the officers did not inform the Defendants that they also had the right to speak with a Mexican consulate.

The right conferred by an international treaty upon detained foreign nationals is not one that should be treated lightly or ignored by the United States' courts or criminal justice system. The treaty has the effect of law in this country, and the signatory countries obviously recognized the right as an important part of criminal procedure as well as international relations when they entered into the agreement

with other nations. Certainly, other countries expect the United States to comply with the treaty, just as we expect other countries that detain our citizens to comply by informing them that they have the right to speak with a United States consulate.

The violations are clear, and, as with other law violations by criminal investigators the remedy must be tailored to precisely address the wrong. *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (explaining deterrent purpose of the exclusionary rule). The Court concludes that the appropriate remedy is to suppress any statement made by a defendant while in custody before being advised of his right to contact his country's consulate. This remedy, like the remedy imposed in *McNabb v. United States,* 318 U.S. 332, 341–345, 63 S.Ct. 608, 87 L.Ed. 819 (1943), relies on the court's power to supervise the administration of criminal justice in the courts, and to encourage Government compliance with the law. The Court explained in *McNabb* that a rights violation need not be one of fundamental, constitutional rights for the Court to redress it: "Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence." *Id.* at 340, 63 S.Ct. 608; *accord Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). In *McNabb v. United States,* the Court suppressed statements when defendants were deprived of their right to appear in front of a judicial officer without delay. Like the right at issue in *McNabb,* the right to contact one's consulate is one worthy of judicial enforcement.

Convention "arguably confers on an individual the right to consular assistance following arrest." *Breard v. Greene,* 523 U.S. 371, ——, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998).

**6.** Mexico, the country of origin for some or all these Defendants, became a signatory to the

agreement on April 24, 1963. *Id.* at 313, 118 S.Ct. 1352.

**7.** The regulation applies to Justice Department arresting officers and attorneys. The treaty obviously has much broader application.

The Supreme Court recently discussed this requirement in case involving a convicted Paraguayan national who was not advised of this right on arrest and subsequently demanded habeas corpus relief. *Breard,* 523 U.S. at ——, 118 S.Ct. at 1352. The Court recognized that Breard had a claim based on the alleged violation of the Vienna Convention, but that he procedurally defaulted on his claim by raising it for the first time in a habeas petition. 523 U.S. at ——, 118 S.Ct. at 1354. The Court further held that, even had Bread properly raised the claim post-conviction, he would have had to show that the denial of this right had prejudiced the trial. *Id.* Clearly the most appropriate time to bring the claim is pre-trial, as the Defendants have in this instance, prior to any proceedings that may arguably be affected by lack of communication between a defendant and his or her consulate. The issue is properly raised and the Court believes that Defendants' statements made prior to being advised of their rights under the Vienna Convention should be suppressed.

*F. Failure by the Prosecution to Comply with Previous Court Order*

Interviewing officers and agents made several tape-recordings of conversations with Defendants in this case. It became apparent at hearing that the Government failed to produce copies of the tapes to defense attorneys until the morning of the hearing, in spite of being ordered in court on February 10, 1998 to make Rule 16 disclosures by February 17, 1999.[8] The Court then ordered the Government to show cause why it should not be sanctioned for failing to provide copies of the tapes by February 17, 1999, pursuant to the prior Order.

The Court rejects the contention the Government made in its response that it is not required to provide copies of the tapes to Defendants but only to make them available for copying. According to a statement made at the suppression hearing by the Assistant United States Attorney E. David Reyes, the copies were provided late because the original tapes had been sent off for transcription prior to any copies being made. This suggests to the Court that, while it is the practice of the Government to make copies of recorded statements for defendants, in this case, the Government did not produce the copies in time to comply with the Order because it wanted a transcription first. AUSA Reyes' statement also suggests that Defendants could not have obtained copies of the tapes by request anyway until the morning of the hearing because the tapes were unavailable.

The Court finds that the Government was in violation of its February 16, 1999 Order for failing to disclose the tapes. However, because the Court recommends suppression of the bulk of Defendants' statements on other grounds, it does not believe that any further sanctions are necessary at this time and trusts that disclosures in the future will be timely.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Fuentes' motion to suppress confessions or statements in the nature of confessions [# 46] be **GRANTED;**

2. Defendant Fuentes' motion to suppress evidence obtained as a result of search and seizure [# 50] be **DENIED;**

3. Defendant Fuentes' motion for return of illegally seized papers and other items [# 51] be **GRANTED in part and DENIED in part.** The motion should be GRANTED insofar as the Government has seized property that is not contraband and is of no evidentiary value. In all other respects, the motion should be DENIED;

8. *United States v. David Fuentes, et al.,* Cr. No. 99–31 (D.Minn. February 16, 1999).

4. Defendant Gonzalez' motion to suppress statements in the nature of confessions [# 69] be **GRANTED in part and DENIED in part.** As to statements given prior to Defendant being advised of his rights under the Vienna Convention, the motion should be GRANTED. As to statements given after he received this warning, the motion should be DENIED;

5. Defendant Gonzalez' motion to suppress evidence resulting from search and seizure [# 71] be **DENIED;**

6. Defendant Olivarez' motion to suppress all electronic evidence and any evidence derived therefrom [# 31] be **DENIED as moot;**

7. Defendant Olivarez' motion to suppress physical evidence, statements made by defendant or identifications of defendant obtained as a result of any illegal searched, seizures, interrogatories or identification procedures [# 32] be **GRANTED in part and DENIED in part:**

 a. The motion insofar as it seeks to suppress physical evidence should be DENIED;

 b. The motion insofar as it seeks to suppress statements given prior to Defendant being advised of his rights under the Vienna Convention should be GRANTED. As to statements given after he received this warning, the motion should be DENIED;

 c. The motion insofar as it seeks identifications of defendant should be DENIED;

8. Defendant Miranda's motion to suppress evidence obtained by search and seizure at 972 Carroll Avenue [# 56] be **DENIED;**

9. Defendant Miranda's motion to suppress statements [# 62] be **GRANTED in part and DENIED in part.** As to statements given prior to Defendant being advised of his rights under the Vienna Convention, the motion should be GRANTED. As to statements given after he received this warning, the motion should be DENIED;

10. Defendant Miranda's motion to suppress evidence obtained by search and seizure of Lumina Van [# 66] be **DENIED;**

11. Defendant Barraza's motion to suppress confessions and statements in the nature of confessions [# 27] be **DENIED as moot.**[9]

April 1, 1999.

---

9. Barraza withdrew this motion at the suppression hearing.