574 S.E.2d 210

**The STATE, Respondent,**

v.

**Domitilo H. LOPEZ, Appellant.**

**No. 3578.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2002.

Decided Dec. 9, 2002.

Gordon A. Senerius, of Anderson, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Druanne D. White, of Anderson, for Respondent.

ANDERSON, J.

Domitilo H. Lopez appeals a Circuit Court order denying his motion to withdraw his guilty plea on a charge of trafficking cocaine. Lopez argues the Circuit Court erred in finding (1) he entered his guilty plea freely and voluntarily; and (2) the State's admitted violation of his rights under the Vienna Convention on Consular Relations (Treaty) provides no basis for withdrawing his guilty plea. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Lopez was a Mexican national residing legally in the United States as a resident alien. In June 1998, law enforcement found approximately 500 grams of cocaine in Lopez's car during a consensual search after he was stopped for speeding. Lopez was indicted for trafficking in cocaine in excess of 500 grams.

With the advice of an assistant public defender, Lopez agreed to plead guilty to the charge in exchange for the State's recommendation that he only receive fourteen years out of a possible twenty-five years. At the guilty plea hearing in January 1999, the judge twice asked Lopez whether he needed an interpreter's assistance in the hearing. Lopez twice responded that he did not need the assistance of an interpreter. The Circuit Court informed Lopez: "If you do not understand during this hearing, if you will stop me and tell me you need an interpreter, we'll be glad to get an interpreter for you." Lopez responded: "All right."

Lopez's counsel informed the Circuit Court that he had "no great trouble" communicating with Lopez over the period of months during which he counseled Lopez. During a litany of questions from the Circuit Court, Lopez's counsel acknowledged that he reviewed the charge of trafficking cocaine and its possible sentences with Lopez, that Lopez understood the charge and possible sentence, and that Lopez wished to plead guilty to the charge of his own free will. The attorney professed his negotiation with the State resulted in a recommendation that Lopez receive a fourteen year sentence in exchange for his plea.

The Circuit Court questioned Lopez regarding his understanding of the charges against him, as well as his constitu-

tional rights, and the plea agreement negotiated between his attorney and the State. Lopez indicated that he was aware of the charges, his rights, and that his guilty plea would result in the loss of his constitutional rights. He agreed his decision to enter the plea agreement did not result from promises or threats, but from his own free will. After entering his guilty plea, Lopez declared he was not under the influence of drugs or alcohol. The Circuit Court asked Lopez: "Do you have any questions about what is going on right now?" Lopez answered: "No."

The State briefly summarized the case's factual background, after which the Circuit Court accepted Lopez's guilty plea. The court found Lopez made the plea "freely and voluntarily with the advice and assistance of his attorney" and that Lopez was "fully aware and cognizant of what has gone on and that he has completely understood [the Circuit Court's] questions of him." Pursuant to the recommendation negotiated between the State and Lopez, the Circuit Court sentenced him to fourteen years in prison, with credit for time served, and imposed a statutorily mandated $100,000 fine.

Lopez subsequently moved to withdraw his guilty plea. In December 1999, the Circuit Court conducted a hearing regarding his motion at which Lopez appeared with private counsel. Lopez conceded the Circuit Court "took all the necessary steps that it could" to ensure he entered his guilty plea willfully and voluntarily. Instead, he argued the State failed to comply with the Treaty's requirement that the State inform Lopez of his right to contact the Mexican Consulate for assistance following his arrest. Lopez claimed that, had he known of his rights, he could have obtained the services of a translator from the Mexican Consulate to help him better understand the "ramifications and consequences" of his decision to enter a guilty plea. Additionally, Lopez stated that the "United States has a woeful record of compliance with [the Treaty]" and that he found no cases in which the United States complied with the Treaty.

The State asserted that it unintentionally failed to advise Lopez of his rights under the Treaty. The Circuit Court denied Lopez's motion.

## ISSUES

I.  Did the Circuit Court err in denying Lopez's motion to withdraw his guilty plea based on the finding that Lopez freely and voluntarily entered the plea?

II.  Did the Circuit Court err in denying Lopez's motion to withdraw his guilty plea based on the State's admitted failure to comply with the Treaty?

## STANDARD OF REVIEW

■ Once a defendant enters a plea of guilty, the decision whether to allow withdrawal of the plea is left to the trial court's sound discretion. *State v. Riddle*, 278 S.C. 148, 292 S.E.2d 795 (1982); *State v. Mansfield*, 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000). An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law. *State v. Hughes*, 346 S.C. 339, 552 S.E.2d 35 (Ct.App.2001).

## LAW/ANALYSIS

### I. Free and Voluntary Nature of Guilty Plea

Lopez contends his guilty plea was not made freely and voluntarily because language and cultural barriers precluded him from understanding his rights under the American legal system in contrast with his rights under the legal system of his native country, Mexico. We disagree.

■ As an initial matter, we note this issue is not preserved for appellate review since the alleged error was not raised below. *State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991) (defendant must object at first opportunity to preserve issue for appellate review; alleged error must be raised to and ruled on by trial judge); *see also State v. McKinney*, 278 S.C. 107, 292 S.E.2d 598 (1982) (absent timely objection at plea proceeding, unknowing and involuntary nature of guilty plea can be attacked only through the more appropriate channel of post-conviction relief).

■ A guilty plea must be an informed and intelligent decision. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea is valid if it represents a

voluntary and intelligent choice among alternatives available to a defendant. *Id.* Before accepting a guilty plea, the trial court must give the defendant an adequate warning of the consequences of his plea, which should include an explanation of the defendant's waiver of his constitutional rights and a realistic picture of all sentencing possibilities. *State v. Armstrong,* 263 S.C. 594, 211 S.E.2d 889 (1975). The trial court need not direct the defendant's attention to each and every constitutional right and obtain a separate waiver of each right if the record reveals an affirmative awareness of the consequences of the guilty plea. *Roddy v. State,* 339 S.C. 29, 528 S.E.2d 418 (2000); *State v. Lambert,* 266 S.C. 574, 225 S.E.2d 340 (1976).

Here, the trial court asked Lopez and his first attorney numerous questions to determine whether Lopez freely and voluntarily decided to plead guilty. In fact, Lopez concedes the trial court "took all the necessary steps that it could." We cannot say as a matter of law that the court erred in accepting Lopez's guilty plea.

Moreover, any error committed by the Circuit Court in refusing to allow Lopez to withdraw his guilty plea is harmless. Lopez maintains his guilty plea did not result from an informed and intelligent decision because "cultural, legal, and language barriers" prevented him from understanding his rights and the ramifications of his guilty plea. According to Lopez, these barriers hampered his counsel's efforts to "effectively explain the difference in the rights a criminal defendant enjoys in the United States compared with the rights of the criminal defendant in Mexico." However, the record contains substantial evidence that Lopez consistently rejected the Circuit Court's offers to provide the services of a translator. We conclude that any prejudice Lopez suffered from language impediments resulted from his own willful refusal to avail himself of the services of a translator as repeatedly offered by the Circuit Court. Furthermore, Lopez fails to explain how a comparative knowledge of the legal rights available to him under the legal systems of the United States and Mexico would have affected his decision to plead guilty. Thus, we find no prejudice to Lopez resulting from any error made by the Circuit Court in accepting his guilty plea.

## II. Vienna Convention

Lopez argues the trial court abused its discretion in denying his motion to withdraw his guilty plea where the State admitted its violation of the Treaty. We disagree.

The Vienna Convention is a seventy-nine article, multilateral treaty that governs the establishment of consular relations between nations and defines the functions of a consulate. *United States v. Emuegbunam,* 268 F.3d 377 (6th Cir.2001). Article 36 of the Treaty, entitled "Communication and contact with nationals of the sending State," requires that a foreign national who has been arrested, imprisoned, or taken into custody be notified by the arresting government of his right to contact the local consulate of his nation of which he is a citizen. *Id.* Article 36 provides, in pertinent part, that if such a foreign national so requests:

[T]he competent authorities of the receiving State [1] shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the [foreign national] arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of [these] rights.

*Vienna Convention on Consular Relations and Optional Protocol on Disputes,* art. 36(1)(b) (Dec. 24, 1969) 21 U.S.T. 77. Regarding consulates, article 36 states:

[C]onsular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

---

1. In this case, the "receiving State" is the United States and the "sending State" is Mexico.

*Id.* at art. 36(1)(c). The Supremacy Clause of the United States Constitution provides that treaties into which the United States enters take precedence over any state law, and must be honored by the individual states as required by the treaty. U.S. Const. art. IV.

The State admits it failed to make Lopez aware of his rights under the Treaty. Lopez alleges the State's failure to comply with the notification requirements of the Treaty created a basis for withdrawing his guilty plea. We disagree.

We note this is a question of first impression in South Carolina. In the absence of South Carolina authority on point, we look to other jurisdictions for guidance.

Rights created by international treaties do not create rights equivalent to constitutional rights. *See Murphy v. Netherland,* 116 F.3d 97 (4th Cir.1997) (habeas corpus proceeding). Thus, Lopez must establish prejudice to prevail. *See United States v. Chaparro–Alcantara,* 37 F.Supp.2d 1122 (C.D.Ill.1999), *aff'd,* 226 F.3d 616 (7th Cir.2000); *United States v. Hongla–Yamche,* 55 F.Supp.2d 74 (D.Mass.1999); *United States v. Miranda,* 65 F.Supp.2d 1002 (D.Minn.1999); *United States v. Tapia–Mendoza,* 41 F.Supp.2d 1250 (D.Utah 1999); *cf. Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (habeas corpus proceeding where Court examined whether violation had an effect on the trial); *United States v. Ademaj,* 170 F.3d 58 (1st Cir.1999) (direct criminal appeal in which court noted that defendant did not indicate how the consulate could have assisted in his defense or that any rights were infringed by failure to notify the consulate); *Waldron v. INS,* 17 F.3d 511 (2d Cir.1993) (deportation proceeding in which court noted that defendant did not claim or demonstrate prejudice from INS's failure to inform of privilege to communicate with the consulate.)

The only specific prejudice Lopez claims to have suffered is that his consulate might have provided a fluent Spanish interpreter to assist him during the guilty plea hearing. However, Lopez rejected the Circuit Court's offers to provide him with the assistance of a translator and never requested the assistance of a translator.

The record indicates Lopez understood English and was able to communicate with his attorney and the Circuit Court.

He answered the Circuit Court's questions, at one point stating, "Yes, I understand." Moreover, Lopez's first attorney indicated he was able to communicate with Lopez during the period of months before his guilty plea hearing.

The record contains ample evidence that if Lopez suffered any prejudice from his failure to have a translator's assistance during his guilty plea hearing, the prejudice resulted from his own actions.

## CONCLUSION

██ We rule that rights created by international treaties do not create rights equivalent to constitutional rights. We hold a violation of rights under the Vienna Convention on Consular Relations (Treaty) provides no basis for withdrawing a free and voluntary plea of guilty. In addition, we find Lopez failed to demonstrate that he suffered any prejudice as the result of the State's failure to make him aware of his rights under the Treaty. Accordingly, the Circuit Court's decision is **AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.