676 S.E.2d 149

**The STATE, Respondent,**

v.

**Fred R. HALCOMB, Jr., Appellant.**

No. 4516.

Court of Appeals of South Carolina.

Heard Nov. 18, 2008.

Decided March 11, 2009.

Rehearing Denied May 4, 2009.

434

436

Deputy Chief Attorney for Capital Appeals, Robert M. Dudek, of Columbia; for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, of Columbia; and John Gregory Hembree, of Conway; for Respondent.

GEATHERS, J.

This is an appeal from a murder conviction. In a joint trial with Luzenski "Allen" Cottrell (Cottrell), Appellant Fred R. Halcomb (Halcomb) was found guilty of the murder of Jonathan "Jon Jon" Love (Love). Halcomb asserts the trial court erred when it denied his motion for severance of trial and when it refused to admit certain evidence that allegedly demonstrated codefendant Cottrell's personal motive for murdering Love. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

██ After Halcomb and Cottrell were indicted for Love's murder, Halcomb made a pretrial motion for severance of trial that was denied. Subsequently, Halcomb and Cottrell were convicted under the "hand of one is the hand of all" theory of accomplice liability.[1] The State asserted that Halcomb and Cottrell killed Love when Love, working at their command, botched an intended arson of reputed drug dealer Brett Smalls' (Smalls) house. The State then alleged that Halcomb and Cottrell sought to burn down Smalls' residence because Smalls and his comrades demanded payment for marijuana that Halcomb and Cottrell stole from Smalls.

The evidence presented at trial was predominantly testimonial. Halcomb's girlfriend, Diane Lawson (Lawson), testified that Halcomb directed Love to commit arson. When Halcomb discovered that the arson attempt had failed, he conspired with Cottrell to kill Love because he believed that Love had become a liability. In fact, the State theorized that in this particular instance, Halcomb exercised control over Cottrell and ordered him to kill Love.

On the night of the murder, Halcomb, Cottrell, Love, and Lawson went to a wooded location in Marion County, and Halcomb directed Cottrell and Love to dig a hole. Halcomb had instructed Lawson, who stayed in the car, to monitor the surroundings for approaching vehicles and to warn Halcomb of nearing vehicles by turning on the headlights of their car. At one point during the digging, Halcomb took the shovel and showed the parties how to "corner off" the hole. Moments later, Halcomb returned to the car.

Later, Cottrell and Love stopped digging and returned to the car for a smoke break, and it was at that time that Halcomb surreptitiously handed a gun to Cottrell. All three men then returned to the woods to finish the digging.

Subsequently, Lawson heard several gunshots coming from where the parties were digging. Moments later, Halcomb

---

1. Under the "hand of one is the hand of all" theory of accomplice liability, one who joins with another to accomplish an illegal purpose is criminally liable for everything done by his accomplice incidental to the common design or purpose. *State v. Condrey*, 349 S.C. 184, 194, 562 S.E.2d 320, 324 (Ct.App.2002).

returned to the car and asked Lawson whether she had heard anything. She replied that she had, and Halcomb went back to the hole and did not return for an hour. When Halcomb and Cottrell reappeared, Love did not accompany them. After they returned to the house, Halcomb told Lawson that he and Cottrell "had to go get rid of the evidence." Cottrell later joked about the "smoke" coming from Love's head "like a mushroom cloud" after he was shot. Halcomb also quipped about the fact that Love was still gurgling when they buried him. Cottrell indicated to another witness that he was disgusted when he killed Love because Love had "used the bathroom on himself." The pathologist testified that Love had received four gunshot wounds, two of which proved fatal.

Further, Amber Counts (Counts), one of Cottrell's girlfriends at the time, stated to law enforcement that while she and Cottrell were separately incarcerated, Cottrell allegedly wrote her a letter in which he stated that "J.J. had tried to sexually assault Cottrell's girlfriend and that J.J. would never hurt anyone again." Apparently, the alleged letter did not indicate the identity of J.J., but Halcomb asserted that those are the initials for Jon Jon, a nickname for Love. Law enforcement testified that they never received the letter and that Counts stated that she had destroyed the letter. The only evidence of the existence of the letter or its contents was Counts' statements.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001); *State v. Butler,* 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003). The appellate court is limited to determining whether the trial court abused its discretion. *State v. Reed,* 332 S.C. 35, 43, 503 S.E.2d 747, 751 (1998); *State v. Bowie,* 360 S.C. 210, 216, 600 S.E.2d 112, 115 (Ct.App. 2004). An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. Foster,* 354 S.C. 614, 621, 582 S.E.2d 426, 429 (2003); *State v. Adams,* 354 S.C. 361, 378, 580 S.E.2d 785, 793–94 (Ct.App.2003).

This Court does not reassess the facts based on its own view of the preponderance of the evidence but simply

determines whether the trial court's ruling is supported by any evidence. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829; *State v. Mattison,* 352 S.C. 577, 583, 575 S.E.2d 852, 855 (Ct.App. 2003). Furthermore, this Court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000); *State v. Landis,* 362 S.C. 97, 101, 606 S.E.2d 503, 505 (Ct.App. 2004).

## ISSUES ON APPEAL

1. Did the trial court err in refusing to grant a severance of trial when a joint trial was allegedly prejudicial to Halcomb because the exclusion of certain evidence hindered his ability to present a defense?

2. Did the trial court err in excluding evidence of Cottrell's letter to Counts in which Cottrell allegedly revealed a personal motive for murdering Love that would have exculpated Halcomb?

## LAW/ANALYSIS

### A. Severance of Trial

Halcomb contends the trial court erred in refusing to grant him a separate trial. Halcomb maintains that the joint trial was prejudicial to him because it limited his ability to present evidence (1) that could have rebutted the State's theory that Halcomb controlled Cottrell, and (2) of Cottrell's letter to Counts that revealed Cottrell's personal motive for murder. We find no error.

Criminal defendants who are jointly tried for murder are not entitled to separate trials as a matter of right. *State v. Kelsey,* 331 S.C. 50, 73, 502 S.E.2d 63, 75 (1998); *State v. Garrett,* 350 S.C. 613, 620, 567 S.E.2d 523, 526 (Ct.App.2002). A motion for severance is addressed to the sound discretion of the trial court. *State v. Harris,* 351 S.C. 643, 652, 572 S.E.2d 267, 272 (2002); *State v. Walker,* 366 S.C. 643, 656, 623 S.E.2d 122, 128 (Ct.App.2005). The trial court's ruling will not be disturbed on appeal absent an abuse of that discretion. *Harris,* 351 S.C. at 652, 572 S.E.2d at 272; *State v. Tucker,* 324 S.C. 155, 164, 478 S.E.2d 260, 265 (1996). An abuse of

discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law. *Walker,* 366 S.C. at 656, 623 S.E.2d at 129; *State v. Lopez,* 352 S.C. 373, 378, 574 S.E.2d 210, 212 (Ct.App.2002).

There is no clearly defined rule for determining when a defendant is entitled to a separate trial, because the exercise of discretion means that the decision must be based upon a just and proper consideration of the particular circumstances which are presented to the court in each case. *State v. McIntire,* 221 S.C. 504, 504, 71 S.E.2d 410, 415 (1952); *State v. Avery,* 374 S.C. 524, 533, 649 S.E.2d 102, 107 (Ct.App.2007); *State v. Castineira,* 341 S.C. 619, 624, 535 S.E.2d 449, 452 (Ct.App.2000), *aff'd,* 351 S.C. 635, 572 S.E.2d 263 (2002). A severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a codefendant or prevent the jury from making a reliable judgment about a codefendant's guilt. *Harris,* 351 S.C. at 652–53, 572 S.E.2d at 273; *State v. Dennis,* 337 S.C. 275, 282, 523 S.E.2d 173, 176 (1999). An appellate court should not reverse a conviction achieved at a joint trial in the absence of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial. *Hughes v. State,* 346 S.C. 554, 559, 552 S.E.2d 315, 317 (2001).

A defendant who alleges he was improperly tried jointly must show prejudice before an appellate court will reverse his conviction. *Dennis,* 337 S.C. at 281, 523 S.E.2d at 176; *State v. Thompson,* 279 S.C. 405, 408, 308 S.E.2d 364, 366 (1983). The rule allowing joint trials is not impugned simply because the codefendants may present evidence accusing each other of the crime. *Dennis,* 337 S.C. at 281, 523 S.E.2d at 176; *State v. Smith,* 359 S.C. 481, 489–90, 597 S.E.2d 888, 893 (Ct.App.2004). A proper cautionary instruction may help protect the individual rights of each defendant and ensure that no prejudice results from a joint trial. *Hughes,* 346 S.C. at 559, 552 S.E.2d at 317.

In the instant matter, the trial court did not abuse its discretion in denying Halcomb's pretrial motion to sever the joint trial because the court's decision was based upon a just and proper consideration of the circumstances in this case. The trial court carefully considered whether any harm would

result to either defendant as a result of a joint trial. In addition, the trial court noted that there were valid administrative and judicial economy reasons for denying the motion to sever.

 Halcomb asserts he should have been granted a separate trial so he could present evidence that Cottrell acted independently of him when he killed a police officer ten days after Love's murder. According to Halcomb, such evidence is relevant because it would rebut the State's theory that Halcomb controlled Cottrell. However, the trial court correctly found that evidence of Cottrell's subsequent crime would not have been admissible even if Halcomb was tried separately. The trial court's assessment regarding the evidence was correct because it is not evident that such evidence would have been relevant. Further, the State's theory was not that Halcomb controlled Cottrell at all times but only that he controlled him during the act of killing Love. Thus, evidence of the subsequent police killing, which was a completely separate incident from Love's murder, was not competent evidence to rebut the State's theory.[2]

In addition, Halcomb contends that a separate trial would have enabled him to introduce evidence of Cottrell's letter to Counts, which would have indicated that Cottrell had his own personal motive for killing Love, and that this evidence would have exculpated Halcomb. However, the record fails to indicate that evidence of the letter would have exculpated Halcomb.

 Further, Halcomb has not demonstrated that he was prejudiced by the joint trial and that he would have obtained a more favorable result in a separate trial. The evidence presented against Halcomb was overwhelming. The State alleged that both defendants participated in the murder of Love and there was overwhelming evidence that Halcomb and Cott-

2. Halcomb's argument regarding his cooperation with the police about Cottrell's killing of the police officer is abandoned on appeal because it was not argued in his brief. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (issues not argued in the brief are deemed abandoned and will not be considered on appeal); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct.App.2004) (where an issue is not argued within the body of the brief, it is abandoned on appeal).

rell conspired to kill Love. Although Cottrell actually pulled the trigger, there was evidence that he was acting under the command of and in concert with Halcomb. Halcomb was present at the scene of the murder and aided, abetted, and encouraged Cottrell in digging the burial hole. Halcomb provided the murder weapon for Cottrell to shoot Love. After Cottrell shot Love, Halcomb helped him bury Love alive. Upon leaving the scene of the murder, Halcomb helped Cottrell "get rid of the evidence." Halcomb admitted to witnesses that he and Cottrell killed Love.

Moreover, to guarantee that there would be no prejudice to either defendant as a result of the joint trial, the trial court explicitly instructed the jury as follows:

> I will talk with you a little bit further about the fact that these are two individuals charge[d] separately. And you must consider that separately and render your determinations separately with regard to these cases.... Now, you must consider each charge separately and you must decide separately whether each individual defendant is guilty or not guilty of the charges alleged in the indictment against that particular individual. It's your duty to give such consideration to each individual defendant on those separate charges alleged in those separate indictments. And you must therefore consider separately the evidence and the law for each individual defendant for each of the charges and write your verdict accordingly. Please do not forget that at any point during the proceeding.

The trial court's cautionary instruction, which is similar to that approved by the South Carolina Supreme Court in *Castineira*, 341 S.C. at 624, 535 S.E.2d at 452, helped protect Halcomb's rights and ensured that no prejudice resulted from the joint trial with Cottrell.[3]

---

3. In *Castineira*, the defendant argued on appeal that the trial court erred in denying his motion for severance. The trial court instructed the jury on the jury's responsibility when considering the evidence, "Now, you are to consider each case separately and write a verdict differently in each case. You may find all the defendants not guilty, one of the defendants guilty and the rest not guilty, or some guilty and not guilty. You are to consider each one separately and determine whether or not the State of South Carolina has proven a defendant guilty of this conspiracy beyond a reasonable doubt." *Id.* The Court found that this

Because the trial court did not abuse its discretion and Halcomb has not shown that he was prejudiced by the joint trial and that there was a reasonable probability that he could have obtained a more favorable result had he been tried separately, we affirm the trial court on this issue.

## B. Exclusion of Evidence

 Halcomb asserts the trial court erred in refusing to admit evidence of codefendant Cottrell's letter to Counts in which Cottrell allegedly revealed a personal motive to murder Love. We agree but conclude that the error is harmless.

 In general, rulings on the admissibility of evidence are within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion resulting in prejudice to the complaining party. *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). In particular, the question of whether to admit evidence under the "best evidence rule" is also addressed to the discretion of the trial court. *Wayne Smith Constr. Co., Inc. v. Wolman, Duberstein, & Thompson,* 294 S.C. 140, 146, 363 S.E.2d 115, 118 (Ct.App. 1987). The preliminary inquiry into whether there has been sufficient evidence to prove loss, destruction or unavailability of an original document so as to justify the admission of secondary evidence is an inquiry, the answer to which is largely within the discretion of the trial court. *Windham v. Lloyd,* 253 S.C. 568, 573, 172 S.E.2d 117, 119 (1970). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald,* 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). Further, for an error of law to warrant reversal based on exclusion of evidence, the appellant must prove the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the verdict was influenced by the lack of the evidence. *Fields v. Reg'l Med. Ctr. Orangeburg,* 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005); *State v. Gault,* 375 S.C. 570, 574, 654 S.E.2d 98, 100 (Ct.App.2007).

Here, the trial court excluded evidence of the letter finding that it was unreliable and inadmissible under the best evi-

jury instruction was sufficient to cure any prejudice that might result from a joint trial.

444

dence rule—Rules 1001 to 1004, SCRE.[1] Rule 1002, SCRE, provides: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." Further, Rule 1004, SCRE, states in relevant part: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—[ ] All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."

The trial court erred in excluding evidence of Cottrell's letter to Counts 'under the best evidence rule.[5] The record does not reveal that the original letter was destroyed through any bad faith of the proponent; thus, there was no basis for excluding Counts' statements about the letter under the best evidence rule.[6]

---

**4.** Contrary to Halcomb's assertion, the trial court did not exclude the evidence because of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) implications. In *Bruton*, the Supreme Court held that admission of a codefendant's confession that implicated the defendant at a joint trial constituted prejudicial error, even though the trial court gave a clear, concise and understandable instruction that the confession could only be used against the codefendant and must be disregarded with respect to the defendant. In fact, the record in the instant matter indicates that the trial court based its decision to exclude the evidence on the best evidence rule: "[T]he court has determined that that letter or that statement is inadmissible under the best evidence rule which is Rule 1001. Simply finding that it really is not reliable to say that someone said something in a letter which is now lost or destroyed[,] unavailable[,][and] never seen by counsel."

**5.** The trial court did not indicate any other ground for exclusion of the letter apart from the best evidence rule, nor did the defendant object on any other grounds.

**6.** Interestingly, in *State v. Head*, 38 S.C. 258, 258, 16 S.E. 892, 893 (1893), the Supreme Court addressed an evidentiary scenario regarding the admissibility of documentary evidence that is similar to that in the instant matter. While in jail, a prisoner wrote a letter to Nancy Love and gave the letter to another person, Mary Praylor, with directions to deliver the letter to Nancy. *Id.* The trial court allowed Mary to testify about the contents of the letter and that Mary gave the letter to Nancy, who opened it, and then asked Mary to read it. As soon as Mary read the letter, Nancy put it in the fire where it burned. *Id.* The Court found that the trial court did not err when it admitted Mary's statements concerning the contents of the letter.

However, even though the evidence was erroneously excluded, its exclusion affords no basis for reversal because Halcomb has not proved any resulting prejudice, i.e., that there was a reasonable probability that the verdict was influenced by the lack of the evidence. *See Fields,* 363 S.C. at 26, 609 S.E.2d at 509. As mentioned above, there was overwhelming evidence to indicate that both parties were accomplices in the murder of Love, regardless of what their individual motives might have been, and thus, admission of evidence of the letter would not have changed the outcome of the trial.

## CONCLUSION

Accordingly, the trial court's order is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.