519 S.E.2d 347

**The STATE, Respondent,**

v.

**James Tyrone BELLAMY, Petitioner.**

No. 24957.

Supreme Court of South Carolina.

Heard May 7, 1997.
Decided June 28, 1999.
Rehearing Denied Aug. 17, 1999.

Finney, C.J., issued dissenting opinion.

Ronald W. Hazzard, of Myrtle Beach, for Petitioner.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, all of Columbia; and Solicitor Ralph J. Wilson, of Conway, for Respondent.

TOAL, Justice:

James Tyrone Bellamy petitioned this Court for a writ of certiorari to review the decision of the Court of Appeals affirming his conviction for possession of crack cocaine with intent to distribute. Bellamy challenges the validity of a search warrant, contending that the Court of Appeals erred in affirming the trial court's refusal to suppress evidence obtained pursuant to the warrant. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

In June 1993, the Police Chief of Atlantic Beach requested the assistance of the State Law Enforcement Division ("S.L.E.D.") concerning a break-in at the Atlantic Beach Police Department. Weapons had been stolen from the Department. The Police Chief informed S.L.E.D., a short time later, that an individual named Luther Stanley, who was in jail in North Myrtle Beach on unrelated drug charges, had information about the missing weapons.

Joseph W. Vaught, a S.L.E.D. field officer ("Officer"), interviewed Stanley. During the interview, Stanley stated that he had seen the weapons at a particular apartment in Atlantic Beach. The weapons he described included a 25 mm pistol, a .38 caliber pistol, and a .22 caliber Derringer. These weapons fit the description of three of the more than twenty weapons stolen from the Police Department. Stanley gave Officer directions to the Atlantic Beach apartment. Stanley was familiar with the location because he had lived at the apartment for days at a time. Accordingly, he knew the people who resided there. Stanley gave Officer the names, including Bellamy's, of the individuals who normally would be in the apartment. In addition to seeing the weapons at the apartment, Stanley claimed he had been at the apartment one late night when weapons were fired. Furthermore, Stanley told

Officer that he had seen drugs at the apartment in early July and at other times.

Officer submitted to the magistrate the following affidavit in support of the search warrant:

At 1420 hours, July 08, 1993, Luthor Spencer Stanley, after being advised of his rights, stated that [during] the early morning hours of July 08, 1993, Stanley observed Lamont Gause fire two shots from a 25 mm pistol while standing outside of the above described premises. [A]ccording to Stanley, he then observed Gause immediately take the 25 mm pistol inside the premises and left it. Stanley further stated that on July 06, 1993, he observed Lamont Gause take a 38 cal pistol and a 22 cal Derringer into the above described premises. These three weapons are the same [description] as weapons stolen from the Atlantic Beach Police department located in Atlantic Beach, S.C. on or about June 23, 1993. [Stanley] further stated that cocaine is usually kept in above residence, inside the refrigerator or the microwave oven.

The magistrate issued a search warrant, which was executed on July 8, 1993. Police found drugs in the kitchen and the bedroom of the apartment, which belonged to Lamont Gause. Bellamy was in the apartment when the officers executed the warrant. He was arrested and eventually tried for possession of crack cocaine with intent to distribute. At trial, Bellamy moved to suppress the evidence seized from the apartment. He argued that the search warrant should be quashed because it was based on a deficient affidavit in that the applicant failed to recite the reliability of Stanley, the in-custody informant. The motion was denied. Bellamy was found guilty of possession of crack cocaine with intent to distribute.

He appealed his conviction, arguing that the trial court erred in admitting the evidence seized during the execution of the search warrant, which he alleged was issued without probable cause. The Court of Appeals affirmed his conviction, with one judge dissenting. This Court granted Bellamy's petition for certiorari to review whether the Court of Appeals erred in affirming the finding of the trial court that the officer's affidavit recited sufficient probable cause to support issuance of the search warrant. We affirm.

## LAW/ANALYSIS

■  A search warrant may issue only upon a finding of probable cause. *State v. Owen,* 275 S.C. 586, 274 S.E.2d 510 (1981). The South Carolina General Assembly has enacted a requirement that search warrants may be issued "only upon affidavit sworn to before the magistrate ... establishing the grounds for the warrant." S.C.Code Ann. § 17–13–140 (1985). In *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983), the United States Supreme Court adopted a "totality-of-the-circumstances" test for probable cause determinations:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*See also State v. Williams,* 297 S.C. 404, 377 S.E.2d 308 (1989). *Gates* departed from the strict two-prong approach of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Aguilar* and *Spinelli* required that separate findings be made of the informant's veracity or reliability and his basis of knowledge.[1]

The Supreme Court wrote in *Gates* that it did not agree with the lower court's reasoning that the *Aguilar–Spinelli* elements should be construed as entirely separate and independent requirements to be rigidly exacted in every case. Rather, "they should be understood simply as closely inter-

---

**1.** *See Owen,* 275 S.C. 586, 274 S.E.2d 510 (Where the affidavit is based on an informant's statement, it must set forth facts which show the reliability of the informant and the underlying factual circumstances that support the accuracy of the informant's information.); *State v. Viard,* 276 S.C. 147, 276 S.E.2d 531 (1981)(An affidavit based upon information supplied by a confidential informant (1) must describe some of the underlying circumstances necessary to enable a neutral and detached magistrate to judge the validity of the informant's conclusion that the drugs are where he claimed they were and (2) must describe some of the underlying circumstances from which the magistrate can determine whether the affiant-officer's unnamed informant was "credible" or his information "reliable.").

twined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543. These are "relevant considerations in the totality-of-the-circumstances analysis." *Id.* at 233, 103 S.Ct. at 2329, 76 L.Ed.2d at 545. *Gates* went on to declare that a deficiency in one of the elements may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *Id.* The case gave the following examples of the interaction of the relevant considerations:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

*Gates,* 462 U.S. at 233–34, 103 S.Ct. at 2329–30, 76 L.Ed.2d at 545 (citations omitted).

We conclude that the magistrate had a substantial basis for concluding that probable cause existed. *See Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (The duty of a reviewing court is simply to ensure that the magistrate has a substantial basis for concluding that probable cause existed.). In this case, given all the circumstances set forth in the affidavit, there was a fair probability that evidence of a crime would be found in the place identified. The informant was a witness to the events described in the affidavit. Moreover, these events were described with great specificity: in the early morning hours of July 8th, informant observed a named individual, who was standing in front of certain described premises, fire two shots from a 25 mm pistol.

He further observed the individual take the 25 mm pistol inside the premises. Additionally, the informant stated that he observed the individual two days earlier take a .38 caliber pistol and a .22 caliber Derringer into the same premises. Furthermore, he said that cocaine was usually kept in refrigerator or the microwave oven of the residence. In addition to its specificity, the affidavit was confirmed to the extent that the weapons described by the informant matched those that had been stolen from the Atlantic Beach Police department just days earlier.

Although the affidavit is weak on the element of the reliability of the informant, this deficiency is compensated for by the strong showing of specificity, first-hand observation, and partial corroboration. In fact, the present facts paint the picture of the very hypothetical envisioned by the United States Supreme Court in *Gates:* "[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d at 545. Accordingly, we agree with the Court of Appeals' majority opinion upholding the sufficiency of the affidavit.

### CONCLUSION

Based on the foregoing, this matter is **AFFIRMED.**

MOORE, WALLER, and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent. In my opinion, the affidavit fails to establish probable cause because there is no information supporting the informant's reliability. While I agree that this deficiency **may** be compensated for by an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand", *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we have no such corroboration in this case. The "firsthand wrongdoing" detailed here consists of firing a gun in the city limits,

and a vague reference to drugs on the premises-there is no firsthand observation of the relevant crime, the theft of the guns. While there is an assertion that the persons in the apartment possessed three weapons which were of the same caliber and/or make as three of the twenty guns stolen from the police department, there is simply nothing to link these common guns or the individuals to that crime.

The specificity in the affidavit is illusory, and the majority's assertion that "the weapons described by the informant matched those that had been stolen ... just days earlier" is an exaggeration. The reliability of this informant is critical, since he gave the statement only after his own arrest on drug charges, inferentially in an attempt to mitigate his own situation. I would find the affidavit insufficient, and reverse and remand for a new trial.