580 S.E.2d 778

**The STATE, Respondent,**

v.

**LaQuinces Delvecchio DAVIS, Appellant.**

**No. 3635.**

Court of Appeals of South Carolina.

Heard Feb. 13, 2003.

Decided April 28, 2003.

Rehearing Denied August 21, 2003.

350

Chief Appellate Defender Daniel T. Stacey and Deputy Chief Appellate Defender Joseph L. Savitz of SC Office of Appellate Defense, both of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

HOWARD, J.:

LaQuinces Delvecchio Davis appeals his convictions for trafficking in crack cocaine and possession of marijuana, arguing the search warrant which led to the discovery of the illegal drugs was not based on probable cause and arguing the underlying search warrant affidavit was defective because it contained false information and did not include allegedly exculpatory information. We affirm.

## FACTS/PROCEDURAL HISTORY

On July 13, 2000, Officer Brian Evans of the York County Multijurisdictional Drug Enforcement Unit received two calls from an anonymous informant stating a person known as "Q" was driving an older model Chevrolet, ice-blue or black in

color with a broken front grill, and was selling crack cocaine in the Green Street area of Rock Hill. The informant provided a license plate number for the vehicle.

Officer Evans recognized the nickname "Q" as Davis' street name and knew Davis had a prior conviction involving crack cocaine. A check of South Carolina motor vehicle records revealed that the vehicle described by the informant was registered to Davis' mother and that the license plate was suspended for failure to pay insurance. Officer Evans went to the area where the informant indicated Davis was selling drugs, but was unable to locate Davis or the vehicle.

The same informant called again the next day, reporting that "Q" had left the Ramada Inn motel in Rock Hill and was headed to Green Street with crack cocaine to sell. In response, police surveilled Green Street looking for Davis. They spotted the vehicle described by the informant being driven near Green Street, at which time one of the officers turned on his blue lights to initiate a traffic stop. The vehicle accelerated, ran a stop sign, and attempted to evade the police for several blocks. Davis, the lone occupant, jumped from the moving vehicle and ran. The unguided vehicle crashed into two parked cars. Shortly thereafter, Davis was apprehended and arrested for failure to stop for a blue light. He told police he had run because he had smoked marijuana shortly before his arrest.

In a search of Davis incident to his arrest, the police found $156.00 in cash, a pager, and a motel key card. Davis stated the motel key card belonged to a motel room in Orangeburg in which he had stayed the night before. Davis repeatedly denied the key card belonged to a motel room in Rock Hill. Notwithstanding his denials, police confirmed that a "Quincy Davis" was registered as a guest at the Rock Hill Ramada Inn motel and that the key card fit the door of the motel room.

Police obtained a search warrant for the room from the local magistrate based upon the following affidavit, supplemented with oral sworn testimony:

Affidavit for Search Warrant

Attachment # 1 Ramada Inn 911 Riverview Rd. Room 227 Rock Hill, S.C.

The affiant, a sworn police officer with the York County Multijurisdictional Drug Enforcement Unit, with over 20 years of narcotic experience, states the following facts to support probable cause to search the premises listed within. On July 13, 2000, Officer Brian Evans of the York County Multijurisdictional Drug Enforcement Unit received information that "Q" was selling crack in the Green St. area of Rock Hill. The source stated that "Q" was in an old ice blue or ice black Chevrolet and gave Officer Evans the vehicle's license number. The source stated that "Q" does not have a driver's license. The tag came back to Rosa Hinton, which is the mother of Quincy Davis. Also the printout indicated the tag was suspended. Officers have personal knowledge that Quincy Davis is known as "Q" and has convictions for selling crack. Officer Evans was unable to locate the vehicle.

On July 13, 2000, Officer Evans received a second call that "Q" was back on Green St. in a yard and selling crack. Officer Evans responded and was unable to locate Davis. On July 14, 2000, Officer Evans received a call from the same source that "Q" was leaving the Ramada Inn in Rock Hill going to Green St. and that "Q" had crack to sell. Officer Evans went to the area and observed the vehicle on Lucky Ln. traveling towards Whitgreen St. towards Green St. Officer Evans attempted a traffic stop and the vehicle accelerated failing to stop for the police blue light. The vehicle drove in a reckless manner speeding and failed to stop for stop signs. The driver then jumped from the vehicle while moving and the vehicle struck two parked vehicles. The driver fled on foot and was caught a short distance away and identified as Quincy Davis. Search incident to arrest revealed a Ramada Inn Motel Key Card in Davis' pants pocket. Davis stated that he spent the night in the Ramada Inn in Orangeburg and kept the motel key. Officers of the DEU went to the Ramada Inn on Riverview Rd. in Rock Hill and the key matched a room registered to Davis. Davis was asked to sign a consent form to search the room and Davis denied completely and fully that he has a motel room in Rock Hill. Davis was asked 3 times and each time he denied having a room. Davis refused to sign the consent stating that it is not his room. Davis stated

that he ran because he had smoked marijuana. Record check revealed in fact that Davis has been convicted of selling crack in the past and narcotic officers of the DEU have received information from sources recently that Quincy Davis is selling crack in the Rock Hill area.

Based on past narcotic investigations it is common that drug dealers secrete contraband and proceeds of drug sales in motel rooms.

In a subsequent search of the room, police found 32.44 grams of crack cocaine, 23.54 grams of marijuana, and drug paraphernalia.

In a pretrial suppression hearing, Davis argued the evidence found in the motel room should be excluded. Davis asserted the only corroborated information was his identity, and under the authority of *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the search was not based upon probable cause.

The court denied the motion to suppress, concluding the affidavit, as orally supplemented, provided probable cause for the issuance of the search warrant. At trial, Davis was convicted of trafficking in crack cocaine, failure to stop for a blue light, and possession of marijuana. Davis was sentenced to thirty years for trafficking crack cocaine, five years for failure to stop for a blue light, and one year for possession of marijuana, with the sentences to run concurrently.

Davis appeals his convictions for trafficking in crack cocaine and possession of marijuana. In his appeal, Davis makes the same argument as he made at the suppression hearing. He also contends the drugs should have been suppressed because the affidavit stated the attesting officer had personal knowledge of Davis' prior conviction for selling crack cocaine, when in fact, his prior conviction was only for possession of crack cocaine. Davis contends the affiant's personal verification of information later determined to be incorrect provides evidence that this false information was intentionally or recklessly conveyed to the magistrate, rendering the warrant defective under a *Franks v. Delaware*[1] analysis. In addition, Davis argues the affidavit was defective because it did not inform the

1. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

magistrate of the exculpatory fact that Davis had no drugs in his possession when he was arrested, contrary to the assertions of the informant.

## ISSUES PRESENTED

1.) Did the magistrate err in issuing the search warrant because it was not based on probable cause to believe contraband would be found in the motel room?

2.) Was the incorrect information concerning Davis' prior criminal record intentionally or recklessly presented to the magistrate, rendering the search warrant defective?

3.) Did the omission of the fact that no drugs were found in Davis' possession at the time of arrest constitute exculpatory information that was intentionally or recklessly withheld from the magistrate, rendering the search warrant defective?

## STANDARD OF REVIEW

The duty of a reviewing court is to decide whether "the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotations omitted); *State v. Bellamy*, 336 S.C. 140, 144, 519 S.E.2d 347, 349 (1999) (adopting the *Gates* standard of review). "A reviewing court should give great deference to a magistrate's determination of probable cause." *State v. Weston*, 329 S.C. 287, 290, 494 S.E.2d 801, 802 (1997); *see Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (holding the Fourth Amendment evidences a "strong preference for searches conducted pursuant to a warrant").

## LAW/ANALYSIS

### I. Totality of the Circumstances

Davis argues the magistrate should not have issued the search warrant because it was not based on probable cause. We disagree.

A magistrate may issue a warrant only upon a finding of probable cause. *Bellamy*, 336 S.C. at 143, 519 S.E.2d at

348. A probable cause determination requires the magistrate to analyze the totality of the circumstances, meaning he should "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *see State v. Johnson,* 302 S.C. 243, 247–48, 395 S.E.2d 167, 169 (1990) (adopting the *Gates* totality-of-circumstances test); *State v. Crane,* 296 S.C. 336, 338–39, 372 S.E.2d 587, 588–89 (1988) (holding the magistrate should determine probable cause based on all the information available to him at the time the warrant is issued, including sworn oral testimony); *State v. Adams,* 291 S.C. 132, 133–34, 352 S.E.2d 483, 485 (1987) ("A determination of probable cause depends upon the totality of the circumstances.").

In this case, a police officer received three phone calls over a two-day period from an anonymous informant stating that Davis was selling illegal drugs. In each of the phone calls, the informant referred to the suspect as "Q." The officer knew from personal knowledge that Davis was known by the street name "Q" and that Davis had a drug-related conviction. Thus, the informant's information was corroborated by the knowledge and prior experience of the police officer. *See United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (holding "a policeman's knowledge of a suspect's reputation . . . is . . . a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely" (single quotation marks and parentheses as in original)); *cf. State v. Dupree,* 319 S.C. 454, 459, 462 S.E.2d 279, 282 (1995) ("The 'experience of a police officer is a factor to be considered in the determination of probable cause.' " (quoting *United States v. Fisher,* 702 F.2d 372, 378 (2d Cir.1983))).

The informant also stated Davis was driving a late model Chevrolet, ice blue or black in color, with a broken front grill. The description included the license plate number. By checking the license plate number provided, the police independently verified that Davis' mother owned a vehicle fitting the description given by the informant, further corroborating the informant's information. *See Gates,* 462 U.S. at 244, 103 S.Ct. 2317 ("Because an informant is right about some things, he is more probably right about other facts, including the claim

regarding ... illegal activity." (internal quotation marks and internal citation omitted)).

It is true that this corroboration only verified the identity of "Q" and his otherwise legal activity of driving an ice blue or black Chevrolet. Absent further information, we agree the analysis in *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), would be implicated. In *J.L.,* the police received an anonymous tip that a suspect fitting a certain description would be standing at a certain location and would be in possession of a firearm. *Id.* at 271, 120 S.Ct. 1375. After verifying the suspect's description and location, the police approached the suspect and frisked him. *Id.* at 268, 120 S.Ct. 1375. The frisk was held to have violated the suspect's Fourth Amendment rights because the tip was not "reliable in its assertion of illegality," and the police had no basis for the frisk other than the tip. *Id.* at 271–72, 120 S.Ct. 1375. However, in contrast to *J.L.,* the independent investigation by police in this case revealed the vehicle's license plate was suspended for failure to pay insurance. This provided a basis for a traffic stop once the police observed Davis driving the vehicle. Thus, *J.L.* is not controlling.

Shortly before police stopped Davis for driving with a suspended license plate, the informant made his last phone call to police in which he stated that Davis had left a Rock Hill Ramada Inn motel room and was headed to Green Street with drugs to sell. According to the affidavit, the attesting officer was a twenty-year veteran of the narcotics unit who knew from his experience that drugs and proceeds of drug sales are often kept in motel rooms. Notwithstanding Davis' argument to the contrary, the law is well settled that the officer's knowledge of general trends in criminal behavior is a relevant consideration in determining probable cause. *See Gates,* 462 U.S. at 243, 103 S.Ct. 2317 (holding defendant's trip to Florida provided part of the basis for probable cause to issue a warrant to search defendant's vehicle and house for drugs because police work has shown that "Florida is well-known as a source of narcotics and other illegal drugs").

When a police officer observed Davis driving the vehicle with the suspended license plate towards the area where the informant stated Davis intended to sell drugs, the officer

initiated a traffic stop. Based upon the status of the vehicle's suspended license plate this stop was proper, a point not contested by Davis in this appeal. After the officer turned on his blue lights, Davis tried to evade police by accelerating, running through a stop sign, jumping and running from the moving vehicle. After being arrested for failure to stop for a blue light, Davis admitted he ran from police because he had smoked marijuana earlier in the day. This information was imparted to the magistrate, and under well-settled law allows a reasonable inference of guilty conduct. *See State v. Ballenger*, 322 S.C. 196, 200, 470 S.E.2d 851, 854 (1996) (holding defendant's flight from police was "at least some evidence of guilt").

In the search of Davis incident to his arrest, police found a Ramada Inn motel key card in Davis' pocket which he denied opened a room in the Rock Hill Ramada Inn. Davis repeatedly denied the key card belonged to the Rock Hill motel room, even after he was told the key card fit the door of the Rock Hill motel room. The independent verification of the identity of the key card further corroborated the informant's information, and Davis' subterfuge provided a reasonable inference that something was located in the room which he did not want police to discover. *See Gates*, 462 U.S. at 241, 103 S.Ct. 2317 ("Our decisions applying the totality of the circumstances analysis ... have consistently recognized the value of corroboration of details of an informant's tip by independent police work."); *cf. State v. Bultron*, 318 S.C. 323, 333, 457 S.E.2d 616, 622 (Ct.App.1995) (holding defendant's suspicious activity was part of the basis for finding that probable cause existed for a search).

■ The magistrate based his decision to issue the warrant to search the motel room on the affidavit and oral sworn testimony of the officer which detailed the information provided by the informant, the police work conducted as a result of the informant's tips, the personal knowledge of the police officer, the fact that Davis engaged in the independent illegal act of driving a vehicle with a suspended license plate, and the suspicious conduct engaged in by Davis. Thus, the magistrate had a substantial basis for concluding probable cause existed. *See Gates*, 462 U.S. at 241–46, 103 S.Ct. 2317 (upholding the issuance of a warrant to search for drugs based on an anony-

mous letter that outlined detailed travel plans of husband and wife, police corroboration of the couple's activities, and informant's allegation that couple was engaged in drug trafficking); *cf. State v. McLaughlin*, 307 S.C. 19, 22, 413 S.E.2d 819, 821 (1992) (holding probable cause to search a toolbox was established by defendant's suspicious behavior, his possession of large amounts of cash, the presence of a marijuana cigarette, and his repeated denials of ownership of the toolbox).

## II. Veracity of the Warrant Affidavit

Davis next argues the magistrate should not have issued the search warrant because the warrant affidavit included false information and omitted exculpatory information. We conclude these arguments are not preserved for review.

"In *Franks v. Delaware*, the United States Supreme Court held that the Fourth and Fourteenth Amendments gave a defendant the right in certain circumstances to challenge the veracity of a warrant affidavit after the warrant had been issued and executed." *State v. Missouri*, 337 S.C. 548, 553, 524 S.E.2d 394, 396 (1999).

*Franks* outlined a two-part test for challenging the warrant affidavit's veracity. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). First, to mandate an evidentiary hearing, there must be "allegations of deliberate falsehood or of reckless disregard for the truth [as to statements included in the warrant affidavit], and those allegations must be accompanied by an offer of proof." *Id.* at 171, 98 S.Ct. 2674. At the hearing, the defendant has the burden of proving the allegations of perjury or reckless disregard for the truth by a preponderance of the evidence. *Id.* at 155–56, 98 S.Ct. 2674; *see State v. Jones*, 342 S.C. 121, 126–27, 536 S.E.2d 675, 678 (2000) (holding a defendant is entitled to challenge misstatements in a warrant affidavit if the following criteria are met: "(1) the defendant's attack is more than conclusory and is supported by more than a mere desire to cross-examine; (2) the defendant makes allegations of deliberate falsehood or of reckless disregard for the truth which are accompanied by an offer of proof; and, (3) the affiant has made the allegedly false or reckless statement").

■ Second, if the deliberate falsehood or reckless disregard for the truth has been established, the court must consider the affidavit's remaining content, with the affidavit's false material set to one side, to determine if it is sufficient to establish probable cause. If the court determines probable cause does not exist after the false material is omitted from the analysis, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see Missouri*, 337 S.C. at 553–54, 524 S.E.2d at 396–97 (adopting the two-prong *Franks* test).

■ Although *Franks* addressed an instance in which false information had been included in the warrant affidavit, the *Franks* test also applies in an instance in which exculpatory material is left out of the warrant. *Missouri*, 337 S.C. at 554, 524 S.E.2d at 397.

To be entitled to a *Franks* hearing for an alleged omission, the challenger must make a preliminary showing that the information in question was omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge. There will be no *Franks* violation if the affidavit, including the omitted data, still contains sufficient information to establish probable cause.

*Id.*

■ In this case, Davis filed a written memorandum prior to trial arguing for suppression solely on the grounds that the information concerning illegal conduct provided by the anonymous informant was not corroborated and, thus, probable cause for the search was not established. The written memorandum did not assert that false information was intentionally or recklessly included in the affidavit, nor did it argue that exculpatory information was intentionally or recklessly omitted. At the conclusion of the suppression hearing, Davis relied upon his written memorandum, without elaboration, to support his motion. Consequently, the trial court was not presented with either issue. Furthermore, the trial court made no ruling with respect thereto. Therefore, we decline to rule upon these issues. *See State v. Hoffman*, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (holding "[a] contemporaneous objection is required to properly preserve an error for appel-

late review" and an "issue which is not properly preserved cannot be raised for the first time on appeal"); *Dickman,* 341 S.C. at 295, 534 S.E.2d at 269 (holding a party cannot argue one ground below and then argue another ground on appeal).

## CONCLUSION

For the foregoing reasons, Davis' convictions for trafficking in crack cocaine and possession of marijuana are

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.