639 S.E.2d 457

**The STATE, Appellant,**

v.

**Craig Duval DAVIS, Respondent.**

**No. 4183.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2006.

Decided Dec. 11, 2006.

Rehearing Denied Jan. 18, 2007.

---

4. In light of this disposition, we need not address Query's remaining issue.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Appellant.

John S. Nichols, of Columbia, for Respondent.

PER CURIAM:

The State appeals the grant of Craig Davis' motion to suppress evidence obtained pursuant to a search warrant procured with false information. We reverse and remand.

## FACTS

On December 31, 2004, the Conway Police Department received reports of multiple shots fired in a residential area. Off-duty City Police Officer Rodrick Mishoe lived in the area, and one of the shots entered his residence. Officer Mishoe looked out his window and saw a black male running up the street firing a gun, and another black male, wearing a ski mask, standing at the edge of his yard. When police arrived on the scene, Officer Mishoe said from the "lips," "eyes," "facial features," and body structure he believed the person in the ski mask was a man who lived behind him. The man went by the nickname "Chubby." Tyrone Williams, one of the responding officers, knew that Craig Duval Davis went by the nickname "Chubby." Officer Williams shared this information with Detective Sergeant Tammy Staples, who then obtained a photograph of Craig Davis from the J. Rubin Long Detention

Center. Staples showed the photograph to Mishoe, who confirmed that the subject was the person he knew as "Chubby."

Police officers proceeded to Davis' residence without an arrest warrant or search warrant. Upon arriving, officers observed Davis and another individual exit a shed located at the back of the property. The men complied with the officers' requests to get down on the ground. As they did so, a handgun protruding from the back of Davis' waistband became clearly visible. A search of the two subjects revealed an additional gun on Davis and two weapons on the other individual. Staples sought a search warrant for the shed and submitted an affidavit in support of her request indicating that "Officer Rodrick [sic] positively identified one of the subjects firing shots in his yard as Graig [sic] Davis...." The search warrant was issued, and a search of the shed revealed another gun, a silencer, cocaine, marijuana, and crack cocaine. Davis was indicted on drugs and weapons charges. At trial, Davis moved to suppress the drug evidence arguing that the search of the shed was based on a falsified affidavit because Mishoe never "positively identified" Craig Davis as a suspect. The trial court granted his motion. The State appeals.

## STANDARD OF REVIEW

On appeal from a suppression hearing, the appellate court will give deference to the circuit court's findings and only reverse if there is clear error. *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000). The appellate court may conduct its own review of the record to ascertain if there is any evidence to support the ruling. *State v. Khingratsaiphon*, 352 S.C. 62, 70, 572 S.E.2d 456, 459–60 (2002).

## LAW/ANALYSIS

The State contends the court's suppression of the evidence because it was discovered through a search warrant predicated on false information was error. We agree.

In determining whether alleged misstatements in an affidavit render a search warrant invalid, the court must conduct the analysis set forth in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

*Franks* outlined a two-part test for challenging the warrant affidavit's veracity. First, to mandate an evidentiary hearing, there must be 'allegations of deliberate falsehood or of reckless disregard for the truth ... and those allegations must be accompanied by an offer of proof.' ... Second, ... the court must consider the affidavit's remaining content, with the affidavit's false material set to one side, to determine if it is sufficient to establish probable cause.

*State v. Davis*, 354 S.C. 348, 359–60, 580 S.E.2d 778, 784 (Ct.App.2003) (citing *State v. Missouri*, 337 S.C. 548, 524 S.E.2d 394 (1999)) (internal citations omitted). "There will be no *Franks* violation if the affidavit ... still contains sufficient information to establish probable cause." *Missouri*, at 554, 524 S.E.2d at 397.

In this case, evidence was presented *in camera* regarding Mishoe's alleged positive identification of Davis as one of the men involved in the shootout near his property. Officer Mishoe testified that he was "not positively sure" the suspect was Chubby and that his looking at the photograph of Davis was not a positive identification of Davis as the man in the ski mask. After hearing the testimony, the court concluded that Mishoe had not "positively identified" Davis. The statement was therefore false and had been used in the affidavit with reckless disregard for the truth. Because there is evidence in the record to support this finding, we do not disturb it on appeal.

Although the second part of the *Franks* analysis is not expressly discussed in the record, the trial court indicated that its decision to suppress the evidence was "consistent with Frank [sic] versus Delaware." The parties agree the trial court conducted the second part of the *Franks* analysis as such an examination would be implicit in a ruling under *Franks*. Therefore, it necessarily follows the trial court determined the remaining information in the affidavit was insufficient to support probable cause to obtain the search warrant. We disagree and conclude the court erred in its analysis.

In many *Franks* cases, a false statement in the supporting affidavit will render a search warrant defective. However, the facts of this case are unique. Had an arrest warrant or search warrant for the person of Craig Davis been sought prior to the

officers' encounter with the suspects, the false identification in Staples' affidavit would have rendered such a warrant fatally defective and any evidence seized as a result would necessarily have been suppressed. However, the *in camera* testimony of Mishoe indicated he told police that one of the suspects looked like his neighbor, "Chubby," whom Williams knew to be Craig Davis. That tentative identification was sufficient to justify the officers proceeding to Davis' residence. The sequence of events was logical from an investigative standpoint, and led to the discovery of two individuals emerging from a shed in the rear of the property. The individuals' compliance with the request to get on the ground revealed a handgun protruding from the waistband of one of the men, which then led to the search of their persons. That search then revealed the additional weapons, and the suspects were arrested.[1] After these events transpired, Staples sought the search warrant for the shed. Staples' affidavit revealed that two armed men emerged from the shed in a neighborhood where a shooting had very recently occurred. In reviewing the affidavit, we believe the unfolding circumstances described therein, not the false statement about a positive identification of Craig Davis, was the basis for the issuance of the search warrant, or at least was information sufficient to justify its issuance.[2] In

---

**1.** We make no determination regarding the propriety of Davis' arrest at the scene.

**2.** The relevant portion of the affidavit in its entirety states:

That on December 31, 2004 Officers with the Conway City Police Department responded to the area of Durant Street for multiple shots fired call. Upon officers arrival, they were met by off duty Conway officer Rodrock [sic] Mishoe who advised that he heard the shots being fired and a single round went into his residence. Officer Rodrick [sic] advised that he saw two black males in his front yard area with guns and then he saw them run down John Street. During the investigation it was learned that two subjects in officers yard were firing shots towards three black males [sic] subjects near the end of Durant Street. It was also discovered that shots fired from two subjects in officers yard, penitrated [sic] a residence on Robin Road. Officer Rodrick [sic] positively identified one of the subjects firing shots in his yard as Graig [sic] Davis (B/M 1775 Hemingway Street, Conway, S.C.). Officer went to residence of 1775 Heningway [sic] Street, to locate Graig [sic] Davis. On officers approach to residence, Graig [sic] Davis along with subject 2—John Fletcher appeared from a shed located behind the residence of 1725 Hemingway Street. For officers safety, subjects were advised to get on the ground, and

large measure, therefore, any identification of the suspect contained in the warrant is only coincidental because it was the shed located on the back of the residence that was the subject of the search, not the individual.

Consequently, the decision of the trial court is

**REVERSED AND REMANDED.**

GOOLSBY, STILWELL, and SHORT, JJ., concur.

protruding from the back pant of subject Graig [sic] Davis was a hand gun. A search of each subject was done and a larger hand gun was located in the waist band of subject—Graig [sic] Davis. A search of subject 2—John Fletcher—revealed he was in possession of two handguns. It is the belief of the affiant that more weapons and ammunition for weapons found will be located inside of wooden shed located behind the residence od [sic] 1725 Hemingway Street.