713 S.E.2d 324

The STATE, Respondent,

v.

Phillip Lee SPEARS, Appellant.

No. 4843.

Court of Appeals of South Carolina.

Heard March 10, 2011.
Decided June 15, 2011.

468

470

472

Assistant Appellate Defender M. Celia Robinson and Appellate Defender Breen R. Stevens, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General A. West Lee, of Columbia; and Solicitor David M. Pascoe, Jr., of Summerville, for Respondent.

GEATHERS, J.

Phillip Lee Spears appeals his convictions for armed robbery, kidnapping, and possession of a firearm during the commission of a violent crime. Spears argues the trial court erred in: (1) denying his motion to sever his case from his codefendant's case prior to trial; (2) denying his motion to suppress trial testimony and evidence of a gun found in the room where Spears was taken into custody; (3) denying his motion to suppress the in-court identifications of both defendants on the ground that the out-of-court identification pro-

cess was unduly suggestive; (4) denying his motion to suppress evidence that Spears submits was obtained without a valid search warrant and without valid consent; and (5) denying his motion for a mistrial, which was based on multiple grounds. We affirm.

## FACTS/PROCEDURAL HISTORY

On November 6, 2006, two men entered Bell's Bait and Tackle Shop in Elloree, South Carolina (also known as, and hereinafter, the Wagon Wheel). The men held the store owner and several of his employees [1] on the floor at gunpoint while they proceeded to rob the store. The robbers absconded with over $200 in cash, approximately $580 in rolled coins, and several packs of Newport cigarettes.

James Bourgeois (the owner of the Wagon Wheel) called 911, and the police arrived within ten minutes. Natasha Rivers, a store employee, was able to provide the police with a detailed description of both suspects. As a result of her description, police developed Phillip Spears as a suspect. Later that same day, approximately four hours after the robbery, police showed Rivers a photo line-up and she immediately identified Spears. Rivers testified she was one hundred percent certain that Spears was the same gunman who first entered the Wagon Wheel that morning. Around six-thirty or seven o'clock on the evening of the robbery, Rivers was shown a second photo line-up. Rivers said she saw the second line-up on a computer screen at the sheriff's office. Rivers immediately pointed to Spears's codefendant, Titus Bantan, although she noted Bantan's hair was different in the photo line-up than it had been when she saw him that morning.

The police investigation led them to the home of Spears's ex-girlfriend, Tanesha Adams. Through Adams, police learned that prior to the robbery Spears had called Adams at 5:00 a.m. and again at 7:00 a.m. to ask her whether she knew if the Wagon Wheel had video cameras. Adams testified she told Spears she did not know. While the police were still present, Spears called Adams again. Adams testified Spears

---

1. The victims were Natasha Rivers, James Bourgeois, Cleveland Williams, and Iskier Prezzie. Rivers's two minor children were also in the store on the morning of the robbery.

admitted to her over the telephone that he robbed the Wagon Wheel that morning.

During the same police visit, Adams's brother told police about a mobile home in Orangeburg, South Carolina, where he said Spears sometimes stayed. Adams's brother volunteered to show police the mobile home. Police arrived at 140 Charlotte Circle in Orangeburg armed with an arrest warrant for Spears. The police entered with their guns drawn and ordered an unknown suspect to back down the hallway with his hands up. After the suspect was detained, the police identified him as Bantan, not Spears. Officer Williams stated, "Initially [Bantan] was handcuffed. Once we believed that he was going to sign the permission to search, of course he was unhandcuffed...." Although Bantan initially consented to a search of the mobile home, Bantan later withdrew his consent after the police located items consistent with the robbery.

The officers then left and obtained a search warrant, which they executed at 9:00 p.m. on the evening of the robbery. They recovered Timberland boots and army fatigue style pants that matched the description of the clothing worn by one of the robbers, several packs of Newport cigarettes, $260 in twenty dollar bills, and a "Coinstar" receipt showing $300 in coins that had been exchanged for cash at a nearby Bi–Lo a few hours after the robbery. Even though the trial court noted Bantan's initial consent was invalid, the trial court ruled all the evidence obtained through the search was admissible via the doctrine of inevitable discovery.

Bantan and Spears were tried together for the Wagon Wheel robbery. A jury convicted both defendants on all counts. The trial court sentenced Spears to thirty years' imprisonment for kidnapping, thirty years' imprisonment for armed robbery, and five years' imprisonment for possession of a firearm during the commission of a violent crime, to run concurrently. This appeal followed.

## STANDARD OF REVIEW

■ "In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

## I. Motion to Sever

 Spears filed a motion *in limine* to sever his case from that of his codefendant, Titus Bantan, and the trial court denied Spears's motion. Specifically, the trial court noted that mutually antagonistic defenses do not mandate separate trials. On appeal, Spears argues severance was required because he was forced to defend himself against the prosecution and against Bantan, and this denied him the specific right to a fair trial.

 "A motion for severance is addressed to the sound discretion of the trial court." *State v. Simmons*, 352 S.C. 342, 350, 573 S.E.2d 856, 860 (Ct.App.2002). "The trial court's ruling will not be disturbed on appeal absent an abuse of that discretion." *State v. Rice*, 368 S.C. 610, 613, 629 S.E.2d 393, 394 (Ct.App.2006). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *Id.* at 613, 629 S.E.2d at 395.

 "Where the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place and character, the trial judge has the power, in his discretion, to order the indictments tried together if the defendant's substantive rights would not be prejudiced." *Simmons*, 352 S.C. at 350, 573 S.E.2d at 860. "Offenses are considered to be of the same general nature where they are interconnected." *State v. Jones*, 325 S.C. 310, 315, 479 S.E.2d 517, 519 (Ct.App.1996). "Conversely, offenses which are of the same nature, but which do not arise out of a single chain of circumstances and are not provable by the same evidence may not properly be tried together." *Id.*

 "A severance should be granted only when there is a serious risk that a joint trial would compromise *a specific trial right* of a codefendant or prevent the jury from making a reliable judgment about a codefendant's guilt." *State v. Walker*, 366 S.C. 643, 657, 623 S.E.2d 122, 129 (Ct.App.2005) (emphasis added). An example of a specific trial right that may be prejudiced from a joint trial is the constitutional right to cross-examination when one codefendant's confession expressly implicates another codefendant but the confessor does

not take the witness stand. *Bruton v. United States*, 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

"A defendant who alleges he was improperly tried jointly must show prejudice before an appellate court will reverse his conviction." *State v. Halcomb*, 382 S.C. 432, 440, 676 S.E.2d 149, 153 (Ct.App.2009). "The rule allowing joint trials is not impugned simply because the codefendants may present evidence accusing each other of the crime." *Id.* "A proper cautionary instruction may help protect the individual rights of each defendant and ensure that no prejudice results from a joint trial." *State v. Stuckey*, 347 S.C. 484, 497, 556 S.E.2d 403, 409 (Ct.App.2001) (citations and quotation marks omitted).

We affirm the trial court's denial of a severance because there was no abuse of discretion; the ruling was supported by the evidence and not affected by an error of law. *Rice*, 368 S.C. at 613, 629 S.E.2d at 395. The evidence against Spears and Bantan was interconnected. Both defendants were charged with an armed robbery that occurred at the Wagon Wheel on the morning of November 6, 2006. Both defendants were charged with kidnapping the same victims during the robbery. Both defendants were charged with possession of a firearm during the commission of these crimes. Finally, Spears's ex-girlfriend, Tanesha Adams, and Adams's brother led police to Bantan's mobile home, which contained evidence corresponding to the items victims testified were stolen from the Wagon Wheel.

Furthermore, no specific trial right was prejudiced by the joinder of these codefendants' trials. *See Bruton*, 391 U.S. at 135–37, 88 S.Ct. 1620 (finding a specific trial right was prejudiced and that prejudice could not be remedied with a curative instruction when one codefendant expressly implicated the other codefendant in his oral confession but refused to take the witness stand). Although the State presented evidence that Spears confessed to committing the crime to Adams over the telephone, there was no evidence Spears implicated Bantan during the call. In addition, Bantan did not implicate Spears at any point during the police investigation. Therefore, we hold the trial court did not abuse its discretion in denying Spears's motion for a severance.

 Spears also argues severance was warranted because he suffered prejudice during Bantan's closing argument, which emphasized the plethora of evidence against Spears in contrast to the scant evidence against Bantan. We disagree. South Carolina law provides that mutually antagonistic defenses, or the possibility that codefendants may accuse each other of the crime, does not necessarily warrant a severance. *See State v. Dennis*, 337 S.C. 275, 281, 523 S.E.2d 173, 176 (1999); *Halcomb*, 382 S.C. at 440, 676 S.E.2d at 153. In addition, the trial court gave a cautionary instruction to the jury during its opening remarks that it should consider the evidence against each defendant separately. *See Stuckey*, 347 S.C. at 497, 556 S.E.2d at 409 (noting a proper cautionary instruction may help to protect the individual rights of each defendant and ensure that no prejudice results from a joint trial).

 Finally, Spears argues severance was required in order to protect his specific trial right to argue last during closing arguments if he presented no evidence or witnesses. We decline to address this argument as it was not argued below, and therefore it is not properly preserved for this court's review. *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal.").

## II. Motion to Suppress Evidence of Gun

 Spears was arrested three days after the Wagon Wheel robbery at a residence in North Carolina. A gun was found under the mattress in the bedroom where Spears was staying. Spears filed a motion *in limine* to suppress evidence of the gun, arguing there was no evidence he ever possessed the gun, such as fingerprints or testimony that the gun belonged to him. Spears further contended Bourgeois's statement to police described a silver automatic gun with black trim, whereas the gun found near Spears at the time of his arrest was a black gun with silver trim. The trial court denied the motion to suppress, noting any discrepancies between the victims' description of the gun they saw during the robbery and the gun found near Spears at the time of his arrest would go to the weight of the evidence rather than to

its admissibility. However, the trial court noted that the State would need to lay a proper foundation for the admission of the gun during the course of the trial.

On appeal, Spears argues the trial court erred in its *in limine* ruling that the gun was admissible despite acknowledging the State would need to establish a proper foundation during trial. Spears submits the gun was irrelevant because the State was unable to establish he owned it and was also unable to establish any connection between the gun and the crimes for which he was indicted. Finally, Spears contends the prejudicial effect of admitting the gun substantially outweighed the probative value.

During trial, Rivers testified she saw Spears with a black gun trimmed with silver on the top. Bourgeois testified he saw Spears with a dark colored gun with chrome parts on it.[2] The State displayed the gun found near Spears to Bourgeois, and he stated it looked similar to the gun he saw on the day of the robbery. Finally, Cleveland Williams (another store employee) testified during trial that the gun found near Spears at the time of his arrest in North Carolina looked "almost exact[ly]" the same as the gun he saw on the day of the robbery.

Spears did not object to any of the victims' trial testimony regarding the appearance of the gun or its similarity to the gun found near Spears at the time of his arrest. *See State v. Forrester*, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001) ("[M]aking a motion *in limine* to exclude evidence at the beginning of trial does not preserve an issue for review because a motion *in limine* is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced.") (citations and quotation marks omitted). In addition, the motion in limine did not occur immediately prior to the victims' testimony regarding the gun. *See id.* ("However, where a judge makes a ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question, the aggrieved

---

2. Spears's trial counsel cross-examined Bourgeois extensively regarding the discrepancy between his description of the gun in his written statement to police (silver with black trim) and his description of the gun at trial (dark colored with chrome parts).

party does not need to renew the objection."). Therefore, Spears's argument regarding the admissibility of the testimony concerning the gun is not preserved for our review.

Spears did object, however, when the State moved the actual gun into evidence. Therefore, we proceed to evaluate that ruling on the merits. "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Moore,* 377 S.C. 299, 305–06, 659 S.E.2d 256, 259 (Ct.App.2008) (citations and quotation marks omitted). "An abuse of discretion occurs when the trial court's ruling is based on an error of law." *Id.* at 306, 659 S.E.2d at 259 (citations and quotation marks omitted).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Rule 401, SCRE. However, relevant evidence may be excluded when its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Rule 403, SCRE. "Evidence is unfairly prejudicial in the context of Rule 403, if the evidence has an undue tendency to suggest a decision on an improper basis, such as an emotional one." *S.C. Dep't of Soc. Servs. v. Lisa C.,* 380 S.C. 406, 417, 669 S.E.2d 647, 653 (Ct.App.2008).

We believe the trial court did not err in admitting evidence of the gun. The State laid a proper foundation for admission of the gun. Specifically, several victims testified the gun found near Spears was very similar to the gun they saw him with on the day of the robbery. Because this evidence was relevant and highly probative, we believe the trial court properly admitted it.

### III. Motion to Suppress In–Court Identifications

Spears suggests the trial court erred in denying his motion to suppress both the out-of-court and the in-court identifications of Spears and Bantan when the out-of-court identification procedures were unduly suggestive.

"The United States Supreme Court has developed a two-prong[ed] inquiry to determine the admissibility of an out-

of-court identification." *State v. Moore,* 343 S.C. 282, 287, 540 S.E.2d 445, 447 (2000) (citing *Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). First, a court must ascertain whether the identification process was unduly suggestive. *Moore,* 343 S.C. at 287, 540 S.E.2d at 447. Next, the court must decide whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *Id.*

"The inquiry must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification." *State v. Turner,* 373 S.C. 121, 127, 644 S.E.2d 693, 696 (2007). The following factors are to be considered in evaluating the totality of the circumstances when determining the likelihood of misidentification:

(1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Id.* at 127, 644 S.E.2d at 696–97.

Spears failed to contemporaneously object when Rivers or Bourgeois made in-court identifications of the defendants during their direct testimony, despite the fact that both witnesses identified Spears and Bantan as the gunmen who robbed the Wagon Wheel on several occasions during the course of their testimony. Consequently, any issue with respect to the witnesses' in-court identifications is not properly before this court. *See State v. Forrester,* 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001) ("[M]aking a motion *in limine* to exclude evidence at the beginning of trial does not preserve an issue for review because a motion in limine is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced.") (citations and quotation marks omitted). In addition, Spears's motion *in limine* to suppress this evidence did not occur immediately prior to the victims' in-court-identifications of Spears and Bantan. *See id.* ("However, where a judge makes a ruling on the admission of evidence on the record immediately prior to

the introduction of the evidence in question, the aggrieved party does not need to renew the objection.").

Spears did contemporaneously object to the introduction of the photo line-ups for both Bantan and Spears. However, we do not believe the photo line-ups were unduly suggestive. In addition, the identification process was so reliable that no substantial likelihood of misidentification existed. *See Moore*, 343 S.C. at 287, 540 S.E.2d at 447. Shortly after the robbery, Rivers was able to provide a detailed description of both of the suspects to police. Rivers testified she "directly" pointed to the photo of Spears when she saw the photo line-up, and she was "a hundred percent sure" Spears was the man who entered the Wagon Wheel first that morning. In addition, Rivers saw the first photo line-up only four hours after the robbery. Finally, Rivers testified she recognized Spears during the course of the robbery as someone she knew "from the neighborhood." Rivers saw the photo line-up of Bantan the evening of the robbery, and she "directly" pointed to Bantan as well. Viewing the totality of the circumstances, no substantial likelihood of misidentification existed. *See Turner*, 373 S.C. at 127, 644 S.E.2d at 696–97.

## IV. Motion to Suppress Evidence Obtained in Search

In a motion *in limine* to exclude all evidence obtained via the search, the trial court ruled Bantan's initial consent to search was invalid based on the fact that his will was overcome. However, after redacting the sentence in the search warrant affidavit referencing Bantan's consent, the trial court found that the affidavit attached to the search warrant still gave rise to probable cause. Therefore, the trial court ruled that all the evidence obtained through the search was admissible via the doctrine of inevitable discovery. On appeal, Spears argues that because Bantan's initial consent was invalid, the subsequent search warrant was also invalid because it was obtained on the basis of illegally discovered evidence. In the absence of this illegally discovered evidence, Spears contends the search warrant affidavit failed to establish probable cause to search the mobile home. Spears further argues the search warrant for evidence seized from 140 Charlotte Circle in Orangeburg, SC, was invalid as it was issued to a Calhoun

County officer who was without jurisdiction to execute the warrant.

 "The trial judge's factual findings on whether evidence should be suppressed due to a Fourth Amendment violation are reviewed for clear error." *State v. Baccus*, 367 S.C. 41, 48–49, 625 S.E.2d 216, 220 (2006). The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV; *see also* S.C. Const. art. I § 10. The United States Supreme Court adopted the federal exclusionary rule to prevent the admission of evidence at trial that was unlawfully seized in violation of the Fourth Amendment and subsequently expanded that rule to apply to the individual states via the Due Process clause. *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914), *overruled by Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, the United States Supreme Court has narrowly interpreted the scope of the exclusionary rule in recent years. *See Hudson v. Michigan*, 547 U.S. 586, 591–94, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (holding violation of the "knock and announce" rule did not warrant the exclusion of all evidence obtained in a search, and noting that the exclusionary rule generates "substantial societal costs") (citations and quotation marks omitted).

 The inevitable discovery doctrine, one exception to the exclusionary rule, states that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, the information is admissible despite the fact it was illegally obtained. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). As explained by the *Nix* Court, "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." *Id.* at 447, 104 S.Ct. 2501. Therefore, in *Nix*, the Court allowed the introduction of physical evidence of the victim's body despite the fact that the defendant's statements regarding the location

of the body had been obtained in violation of his right to counsel. *Id.* at 437, 449–50, 104 S.Ct. 2501. The Court noted that search parties were approaching the location of the body, and there was testimony that it would only have taken an additional three to five hours to discover the victim's body if the search had continued. *Id.* at 449, 104 S.Ct. 2501.

 "A search warrant may issue only upon a finding of probable cause." *State v. Bellamy,* 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999). The duty of the appellate court is simply to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Id.* at 144, 519 S.E.2d at 349 (citing *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Dunbar,* 361 S.C. 240, 253, 603 S.E.2d 615, 622 (Ct.App.2004) (citing *Gates,* 462 U.S. at 238, 103 S.Ct. 2317). "The appellate court should give great deference to a magistrate's determination of probable cause." *Dunbar,* 361 S.C. at 253, 603 S.E.2d at 622.

In the instant case, the trial court found that all the evidence recovered from 140 Charlotte Circle was admissible under the inevitable discovery exception. We agree. Relying on *State v. Davis,* 371 S.C. 412, 639 S.E.2d 457 (2007), the trial court first redacted any reference to Bantan's initial consent due to the fact that his will was overcome by the officers' show of force and then found the remaining search warrant still gave rise to probable cause to search the residence. *See Davis,* 371 S.C. at 415–17, 639 S.E.2d at 459–60 (noting that a court may redact alleged misstatements in an affidavit and consider the remaining content of the affidavit to determine whether it is sufficient to establish probable cause). The remaining portion of the search warrant, as read into the record by the trial court, was as follows:

> An armed robbery occurred at Bell's Bait and Tackle Shop in Elloree, South Carolina, and a suspect, Phillip Spears, was positively identified by a store clerk from a six photo line-up compiled by SLED. Information was received by

officers from the Calhoun County Sheriff's Office that suspect sometimes stayed at 140 Charlotte Circle in the City of Orangeburg, so officers responded to that location. Upon arriving at 140 Charlotte Circle, a second suspect, Titus Bantan, was located and had also been positively identified from a six photo line-up compiled by SLED as one of the armed robbery suspects.

As previously discussed, we believe the out-of-court photo identifications of Spears and Bantan were valid and not the product of unduly suggestive procedures. In addition, we disagree with Spears's contention that the affidavit mentions any of the evidence initially located by police during the period of Bantan's initial consent. Viewing the totality of the circumstances, the magistrate had a substantial basis for determining evidence relevant to the Wagon Wheel robbery would be found at 140 Charlotte Circle. *See Bellamy*, 336 S.C. at 144, 519 S.E.2d at 349. We hold the trial court properly found that the magistrate had a substantial basis for concluding that probable cause existed. Accordingly, the evidence recovered from 140 Charlotte Circle was admissible under the inevitable discovery doctrine as the evidence would have been found subject to the valid search warrant, regardless of whether Bantan was coerced to give consent during the initial search. *See Nix*, 467 U.S. at 443–44, 447, 104 S.Ct. 2501.

We need not address Spears's remaining argument with respect to whether the search warrant was improperly issued to an officer without jurisdiction to execute the warrant because the entire argument on appeal consists of a single sentence. *See State v. Cutro*, 332 S.C. 100, 108 n. 1, 504 S.E.2d 324, 328 n. 1 (1998) (noting a one sentence argument is too conclusory to present any issue on appeal).

## V. Motion for a Mistrial

 Spears argues the trial court erred in denying his motion for a mistrial after Officer Christopher Golden improperly introduced testimony concerning .40–caliber bullets, drugs, and a shotgun recovered during the search of 140 Charlotte Circle. Spears further argues the trial court erred in denying his second motion for a mistrial on the ground that the jury was improperly influenced by extraneous information regarding another robbery that Spears and Bantan allegedly committed.

 "The granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion." *State v. Kelly,* 372 S.C. 167, 170, 641 S.E.2d 468, 470 (Ct.App.2007) (citation and quotation marks omitted). "A mistrial should only be granted when absolutely necessary, and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial." *State v. Stanley,* 365 S.C. 24, 34, 615 S.E.2d 455, 460 (Ct.App.2005) (citation and quotation marks omitted).

 "The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way." *State v. Goodwin,* 384 S.C. 588, 605, 683 S.E.2d 500, 509 (Ct.App.2009) (citation and quotation marks omitted). "An instruction to disregard incompetent evidence usually is deemed to have cured the error in its admission unless ... it is probable that notwithstanding such instruction or withdrawal the accused was prejudiced." *State v. Simpson,* 325 S.C. 37, 43, 479 S.E.2d 57, 60 (1996). "Error is harmless when it could not reasonably have affected the result of the trial." *State v. Reeves,* 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990).

We affirm the trial court's denial of both of Spears's mistrial motions. During pre-trial motions, the trial court ruled that the State was not to refer to drugs, a shotgun, or .40–caliber bullets, all of which were found in Bantan's mobile home at the time of the search. During trial, Officer Golden was listing the items recovered from 140 Charlotte Circle and he mentioned recovering "some bullets, .40–caliber, a shotgun. Plus, there [were] some drugs found." Bantan's counsel immediately objected and moved for a mistrial after Officer Golden improperly testified about these items. Spears's counsel joined in the motion for a mistrial. The State conceded Officer Golden's testimony regarding a shotgun and drugs was inadmissible. The trial court agreed the items should not have been mentioned, but denied Bantan's motion for a mistrial. The trial court offered to give a curative instruction for the jury to disregard "the testimony that was given by [Officer Golden] for ten seconds before we took our break." Both Bantan and Spears declined any curative instruction by the trial court, arguing the instruction would only bring more

attention to the prejudicial testimony and that a mistrial was the only remedy.

We affirm the trial court's denial of Spears's first mistrial motion as the testimony was harmless in light of the overwhelming evidence of guilt presented at trial. *See Reeves,* 301 S.C. at 194, 391 S.E.2d at 243 ("Error is harmless when it could not reasonably have affected the result of the trial."). Specifically, Rivers and Bourgeois testified at trial that they were both one hundred percent certain that Spears was the first gunman who entered the Wagon Wheel. In addition, the State presented evidence that Spears confessed to committing the robbery over the phone to Adams.

Spears argues the trial court erred in denying his second mistrial motion based on extraneous information published to the jury concerning an unrelated bank robbery. However, Spears's appellate brief fails to cite any legal authority in support of this argument. Therefore, this argument has been abandoned on appeal. *State v. Garner,* 389 S.C. 61, 67, 697 S.E.2d 615, 618 (Ct.App.2010) (recognizing an argument is deemed abandoned on appeal when it is merely conclusory and made without supporting authority).

Finally, during oral argument, Spears's appellate counsel suggested the trial court erred in denying his mistrial motions because the trial court did not evaluate all of the mistrial factors on the record before ruling on the motion. *See State v. Thompson,* 276 S.C. 616, 621, 281 S.E.2d 216, 219 (1981) (listing several factors to be considered by the trial court in evaluating the merits of a mistrial motion). We decline to address this argument as it was raised for the first time during oral argument and was not addressed in Spears's appellate brief. *Bochette v. Bochette,* 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct.App.1989) (holding an appellant may not use oral argument as a vehicle to argue issues not argued in the appellant's brief).

## CONCLUSION

For all of the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

WILLIAMS, and LOCKEMY, JJ., concur.